## McAunich v. The Mississippi and Missouri Railroad Company.

1. **Railroads:** CONSTITUTIONAL LAW. Section 7 of chapter 169 of the acts of 1862, entitled "An act in relation to the duties of railroad companies" is not inconsistent with section twenty-nine, article three, of the Constitution.

> *Argu.* 1. CONSTITUTIONAL LAW: TITLES TO ACTS. A provision fixing penalties for a violation of duties is within the purview of the title to an act prescribing duties.

> *Argu.* 2. The courts do not resort to a critical or technical construction for the purpose of excluding parts of acts from the purview of the title.

2. **Constitutional law:** UNIFORMITY OF OPERATION. The number of citizens affected by a law does not control its validity under sec. 6, art. 1, and sec. 30, art. 3 of the Constitution. If the law operates upon every person within the relations or circumstances provided for, it is sufficient as to uniformity."

3. **Torts:** NEGLIGENCE. No one can recover for an injury of which his own negligence was, in whole or in part, the proximate cause.

4. **New trial:** VERDICT AGAINST EVIDENCE. It is with great reluctance that appellate courts interfere with the finding or verdict of a jury. In all cases of doubt the verdict will be sustained; but when there is no such doubt, the verdict will be set aside.

*Appeal from Cedar District Court.*

THURSDAY, JUNE 7.

THIS action is brought under section 4111 of the Revision, which provides that "when a wrongful act produces

death, the perpetrator is civilly liable for the injury." The statute provides that the parties to the action shall be the same as though brought for a claim founded on contract against the wrongdoer, and in favor of the estate of the deceased.

The plaintiff sues as the administratrix of the estate of Samuel J. McAniuch, deceased, and claims that the decedent was killed by reason of the careless and negligent acts of the defendant's engineer. There was a trial to a jury, and verdict and judgment for four thousand dollars for the plaintiff.

The defendant appeals.

*Cook & Drury* for the appellant.

*James T. Lane* and *D. C. Cloud* for the appellee.

1. Before proceeding to annul, by judicial sentence, what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any reasonable intendment, or allowable presumption. *People v. Supervisors of Orange*, 17 N. Y., 235.

2. Section 7 of the act of 1862, chapter 169, defines the duties of railroad corporations to their employés.

3. The word "*duties*," in the title to the act of 1862, includes also *liabilities*. If section 7 creates liabilities and does not define "*duties*," so does every preceding section of the statute, and hence all those sections would be void also by the same argument, unless we interpret "*duties*" to include *liabilities*. This is manifestly the opinion of the legislature. "The *real intention*, when accurately ascertained, will always prevail over the literal sense of the terms." 1 Kent Com., 462; *People v. Draper*, 15 N. Y., 532; *Ins. Co. v. Mayor*, 4 Seld., 241; 7 Md., 151; 15 Ill., 20. Statutes must be expounded according to the mean-

*ing*, and not according to the *letter*. *Pollin* v. *Bushnell*, 5 Barb., 156; *The People* v. *Utica Ins. Co.*, 15 Johns., 380; 1 Sumn., 159; *Smith* v. *Helmar*, 7 Barb., 416; *Donaldson* v. *Wood*, 22 Wend., 395; *The State of Iowa* v. *County Judge*, 2 Iowa, 280.

4. A railroad corporation is not within the term "*citizen*," or "*class of citizens*," as used in section 6 of article 1 of the Constitution. Being the mere creature of the legislative will, a corporation takes no rights or privileges except such as are positively conferred upon it by the legislature. It may be subjected to duties, liabilities and penalties, which cannot be imposed upon a "*citizen*." The power to grant or deny exclusive privileges to corporations, is expressly recognized in section 12 of article 8 of the Constitution.

5. Section 7 of the act of 1862 does not *grant* privileges or immunities to any "*citizen*" or "*class of citizens*." It is claimed, however, in argument, that by denial to railways of exemption from liability for damages occasioned through the negligence of a co-employé, it confers or grants the exemption or immunity to all other corporations or persons.

This we deny, for this privilege, exemption or immunity to all others is not granted *by this act*. It existed, if at all, prior to the act of 1862, and was not granted by it.

But even in that view, the grant of these privileges to all others is *upon the same terms* open to railroads, viz.: upon the manifest *term* of not operating railroads by the use of the extraordinary power of steam, as applied to railways.

6. Sections 6 and 7 of the act of 1862 are so analogous that the case of *Jones* v. *The Galena and Chicago Union Railroad Company*, 16 Iowa, 6, is conclusive of this.

*Sullivan* v. *The M. & M. Railroad Company*, 11 Iowa, 421, is *obiter dictum*, this point not having been necessary to the decision in that case.

McAunich v. The Mississippi and Missouri Railroad Co.

COLE, J. — I. The petition alleges that the deceased was in the employ of the defendant as brakeman, and that by reason of the careless and negligent acts of the defendant's engineer in running the train in the night time without a head light, the train ran into and over an ox team, forcing the cars together and fatally injuring the deceased.

*1. RAIL-ROADS: constitutional law.*

The defendant demurred to the petition, because it appeared therefrom, that the deceased was an employé of the defendant, and that his death was caused through the carelessness of other employés of the defendant, engaged in its ordinary business.

The demurrer was overruled and the defendant answered, but the same question was again properly made by exceptions to the giving and refusing of instructions, and on a motion for a new trial.

The question raised by the demurrer and otherwise as stated, and the only one discussed by counsel thereunder, is as to the constitutionality of section 7, of Ch. 169, of the acts of 1862, entitled "An act in relation to the duties of railroad companies." Section 7 is as follows: "Every railroad company shall be liable for all damages sustained by any person, including employés of the company in consequence of any neglect of the agents, or by any mismanagement of the engineer or other employés of the corporation to any person sustaining such damage."

It is claimed first, that the section is in conflict with and void by reason of art. 3, section 29 of the State Constitution, which is as follows: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

*Argu. 1. CONSTITUTIONAL LAW: titles to acts.*

The specific objection is, that since the title is "An act in relation to the *duties* of railroad companies," and section seven relates only to their *liabilities*, such section is void within the purview of the Constitution quoted above. The objection is not well taken. Every law prescribing *duties* must have the sanction of *liabilities* resulting from a failure to perform those duties, in order to have any practical beneficial effect or operation. To a legal mind the idea of liabilities is as certainly conveyed by the title, "An act in relation to the duties of railroad companies," as it would be by adding "and prescribing the liabilities for failure to perform such duties."

In the language of the Constitution quoted, the liabilities are "matters properly connected therewith." Courts do *Argu. 2.* — not resort to critical or technical construction for technical construc- the purpose of excluding parts of acts from the tion. purview of the title. But they adopt a reasonable, if not a liberal, construction. See *The State of Iowa* v. *County Judge, &c.,* 2 Iowa, 280; *Morford* v. *Unger,* 8 Id., 82; *Davis & Bro.* v. *Woolnough,* 9 Id., 104.

II. Article 1, section 6 of our State Constitution provides that "all laws of a general nature shall have a 2. CONSTI- uniform operation; the General Assembly shall TUTIONAL LAW: uni- not grant to any citizen or class of citizens, privi- formity of operation. leges or immunities, which upon the same terms shall not equally belong to all citizens." And, again, article 3, section 30, "The General Assembly shall not pass local or special laws in the following cases: * * * * (enumerating certain cases not relevant to this). In all cases above enumerated and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation, throughout the State." * . * * It is further objected in this case, that section 7 of the act of 1862, quoted *supra,* is in conflict with these provisions of the State Constitution, in that it grants exclusive privi-

leges which upon the same terms do not equally belong to all citizens; and that the section is not general and of uniform operation throughout the State, for that it relates only to railroad corporations.

At the common law, and aside from the sections of the act referred to, it was well settled that the employer was not liable to an employé for damages sustained by reason of the negligence of a co-employé in the same general service. This rule of the common law is changed in this State by section seven, *supra*, so far as railroad corporations are concerned; and they are made liable for "any *neglect* of the *agents*, or by any *mismanagement* of the *engineer* or other *employés*." This law is general, and of uniform operation throughout the State.

It applies to all railroad corporations now in existence, or which may hereafter exist, and is just as general and uniform as it would be if it applied to all common carriers; and in the latter case, it is conceded by appellant's counsel in their printed argument, the law would be valid. Very many laws, the constitutionality of which are not doubted, do not operate alike upon all citizens of the State. Take the case of the general laws for the incorporation of cities and towns, which is one of the special cases enumerated in article 3, section 30, *supra*, in which the laws must be general and of uniform operation. By those laws, certain rights, powers and privileges are conferred upon cities of the first class, of which there are but three or four in the State; certain other different and less powers and privileges are conferred upon cities of the second class, and still different and less upon towns. The same is true of corporations organized for different purposes. Each class has its powers and privileges different from the other.

These laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the rela-

tions and circumstances provided for, is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of persons within the scope of·their operation.

The idea advanced in argument that the act is in conflict with article 1, section 6, because the liability is not *upon the same terms* extended to stage companies, steamboats and other corporation employés, stops short of a full statement of the case.

We need not now stop to determine whether section 7 of the act *does* grant any privilege or immunity, instead of imposing a new liability; or whether a corporation is a citizen, within the meaning of that clause of the Constitution. The act not only requires that there must be an employer and an employé, but that the former must be a railroad company and the latter employed about its business.

Now, if there is an employer and an employé, but no business of a railroad company to be engaged in, then the case is not within the act. But the same liability is extended by the act, "*upon the same terms*," to all in the same situation. Of the constitutionality of the act, we have no doubt. Of its policy, which may tend to relax the diligence of employés for the safety of passengers, since an indemnity for injury to themselves is provided by law, we have nothing to do. The language used by LOWE, J., in *Sullivan* v. *The Mississippi and Missouri Railroad Co.*, 11 Iowa, 421, pertains wholly to the argument advanced in the case and not to the decision of the point made; and even if susceptible of the construction sought to be placed upon it by the appellant's counsel, cannot be relied upon as authority. The same question was presented and actually decided by this court in *Jones* v. *The Galena*

*and Chicago Union Railroad Company,* 16 Id., 6, in accordance with the view herein expressed.

III. The only other point made in the case is, that the verdict was contrary to the evidence and the law of the case. The facts shown by the evidence may be briefly stated. At about twenty-five minutes after five o'clock in the evening of the fifteenth day of December, eighteen hundred and sixty-two, when it was dark, a train, composed of an engine, baggage car, twelve freight cars, and one passenger car, was approaching Wilton Junction, on the defendants' road. The train was going from the east toward the west, and the head light of the engine was not lighted. The railroad at that point crosses a public highway, and at which there is a cattle guard. At some uncertain time in the evening, before the train approached, a yoke of oxen and wagon, unattended by any person, had fallen into the cattle guard, and being unable to extricate themselves, were still there. The grade was very considerably descending westward, and the train, moving at its usual speed, ran on to and over the oxen and wagon. The engine was thrown from the track on one side and three freight cars on the other side of the road. The deceased was riding between two of the freight cars, and was so severely jammed and bruised as that he died therefrom in three or four days thereafter.

The testimony is, perhaps, somewhat conflicting as to whether, if the head light had been burning, it would have reflected the light so far ahead as to have enabled the engineer to see the oxen and wagon in time to have stopped the train and avoided the accident. It is probable from the evidence that it would not. But on this point, in view of the conflict and doubt, the finding of the jury would be conclusive upon us. But upon the point that the deceased was between the freight cars, and riding there to keep out of the wind; that his duty did not call him there; that it

*3. Torts: negligence.*

was against the rules of the company for brakemen to ride there; that it was a careless, imprudent and dangerous place to ride; that he had been warned and cautioned, if not authoritatively directed, not to ride there, and that his injuries were received by reason of his being there, and no other person on the train was seriously injured, are all facts proved in the case, and upon which there is no conflict of evidence.

It is a general rule of law, that no one can recover for an injury of which his own negligence was in whole or in part the proximate cause. Redfield on Railways, 330, *et seq.* This rule of law was given very fully and plainly by the court, in the charge to the jury.

**3. TORTS: negligence.**

If the jury found the facts, as stated above, it is difficult to see how, indeed, it is impossible that they could find that the conduct of the deceased was not in part the proximate cause of his injury. If they did not so find, the verdict was contrary to the evidence, for there is no conflict of testimony as to those facts. It is with reluctance and caution that appellate courts interfere with the finding or verdict of a jury.

**4. NEW TRIAL: verdict against evidence.**

Where there is a reasonable *doubt as to it*, or where there is a conflict of evidence upon the whole case, the verdict will be upheld. But where there is no such conflict or doubt, the duty to set it aside is plain, and must be obeyed.

For the reason that the verdict is contrary to the evidence and the instruction of the court, the judgment is

Reversed.