STATE OF IOWA, Appellant, v. FAIRMONT CREAMERY COMPANY OF NEBRASKA, Appellee.

**Constitutional law:** STATUTES: CONSTRUCTION. Laws of a general nature must be uniform in their operation and contain no grant of special privilege or immunity to any citizen or class of citi-

zens; but they must also be clearly and palpably in violation of the constitution to render them invalid in such respects. The mere fact that a statute is limited to comparatively few persons in its operation, if the classification is substantial and reasonable, is not sufficient to condemn it.

**Same:** UNIFORM OPERATION: CLASSIFICATION. A classification of subjects of legislation must be based upon a reasonable and substantial distinction, which differentiates one class from another, so as to suggest the necessity of different legislation as to such classes; and in determining the reasonableness of a statute in this respect courts will take note of matters of common knowledge and report.

**Same.** The constitution announces certain basic principles which must be observed in the enactment of statutes, but it will not be given a technical and strained construction to impair the efficiency of the legislature in dealing with problems affecting the public welfare, such as unfair competition. And where a statute is directed against a particular evil of that character, it will not for that reason alone be regarded as arbitrary in its classification. Thus the Act of the Thirty-third General Assembly providing that the buying of milk, cream or butter fat for manufacture, or of poultry, eggs and grain for storage, shall be considered unlawful discrimination and shall be punished, when carried on for the purpose of destroying the business of a competitor by paying more for such commodities in one locality than in another, after making an allowance for the difference in quality and cost of transportation, is not in violation of the constitutional provisions relating to uniformity of laws and special privileges, the classification being reasonable and substantial, although the practical operation of the act is limited to comparatively few people.

**Statutes:** ENACTMENT: SUFFICIENCY OF TITLE. It is not necessary that the details of the subject matter of a legislative act be set forth in its title, but if the title gives a fair key to the contents of the act it will be sufficient. In the instant case the title of the original act, of which the one in question is amendatory, described the act as one to prohibit unfair discrimination between different sections, communities or localities, or unfair competition, and provided penalties. The title of the amendatory act referred to the law as it appears in a certain section of the Code, relating to unfair discrimination between different sections, communities or localities, defining the same and providing penalties therefor. The objection to the title of the amendatory act was that it did not contain any indication that the later act embraced discrimination in commodities not included in the original act. *Held,* that as the

act was amendatory its subject as stated in the title was appropriate to the contents of the act and therefore sufficient.

**Criminal law:** APPEAL BY STATE: SCOPE OF REVIEW. The defendant against whom an indictment has been dismissed can not be affected directly by a reversal on the state's appeal, and the appellate court therefore need only review such questions as are presented and argued by the state.

*Appeal from Buena Vista District Court.*—HON. A. D. BAILIE, Judge.

MONDAY, DECEMBER 18, 1911.

THE defendant was indicted in Buena Vista county, under the provisions of section 5028-b, Code Supplement, as amended by chapter 222 of Acts 33d General Assembly. Upon motion of the defendant at the close of the State's evidence, the trial court dismissed the indictment and discharged the defendant. The state has appealed.—*Reversed.*

*George Cosson,* Attorney-General, and *W. C. Edson,* County Attorney, for the State.

*Hainer & Smith* and *Faville & Whitney,* for appellee.

EVANS, J.—The discharge of the defendant in the trial court is final and can not be disturbed by us on this appeal. The state has taken an appeal for the purpose of obtaining a review of the holding of the trial court as to the constitutionality of the statute upon which the indictment is based. The statute in question purports to be an amendment to section 5028-b of the Code Supplement, and is as follows:

Any person, firm, company, association or corporation, foreign or domestic, doing business in the state of Iowa and engaged in the business of buying milk, cream or butter fat for the purpose of manufacture, or of buying poul-

try, eggs or grain for the purpose of sale or storage, that shall, for the purpose of creating a monopoly or destroying the business of a competitor, discriminate between different sections, localities, communities, cities or towns of this state by purchasing such commodity or commodities at a higher price or rate in one section, locality, community, city or town than is paid for the same commodity by said person, firm, company, association or corporation in another section, locality, community, city or town, after making due allowance for the difference, if any, in the grade or quality, and in the actual cost of transportation from the point of purchase to the point of manufacture, sale or storage, shall be deemed guilty of unfair discrimination which is hereby prohibited and declared to be unlawful, but prices made to meet competition in such locality shall not be in violation of this act; and any person, firm, company, association or corporation or any officer, agent, receiver or member of any such firm, company, association or corporation found guilty of unfair discrimination as defined herein, shall be punished as provided in section five thousand twenty-eight c (5028-c) of the Supplement to the Code, 1907.

This statute was assailed in the court below as unconstitutional on two grounds, namely: (1) That it was in violation of sections 1, 6, and 9 of article 1, and of section 30 of article 3, of the Constitution of Iowa, and of section 1 of the fourteenth amendment to the Constitution of the United States. (2) That it was in violation of section 29, article 3 of the Constitution of Iowa, in that the subject of the act was not expressed in the title, as required by such section of the Constitution. The trial court sustained both grounds of the attack upon the constitutionality of the statute, and we are required to review such holding. The questions thus presented will be considered in the order stated.

Section 6 of article 1 of the Constitution of Iowa is as follows: "Laws Uniform. Sec. 6. All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen or class of

citizens, privileges or immuunties which upon the same terms, shall not belong to all citizens." We need not quote the other provisions of the Constitution above referred to, because all must be tested by the same considerations so far as they relate to the first ground of attack, and we shall have no need to discuss them separately.

It is urged by appellee that the act is discriminatory and arbitrary in its classification. Not only is the act limited in its application to the business of buying milk, cream, butter fat, poultry, eggs, and grain,

1. CONSTITU-
TIONAL LAW:
statutes:
construction.

but it is further limited to particular methods of pursuing the same. It operates upon the business of buying milk, cream, and butter fat only when such articles are bought for the purpose of manufacture, and it operates upon the business of buying poultry, eggs, and grain only when the same are bought "for the purpose of sale or storage." The argument directed against the statute is not without its cogency. If it were presented to a legislative committee, it might properly cause hesitation as to the particular form of the proposed legislation; but the courts have neither advisory nor veto powers over legislation as such. And even though the court may entertain great doubt as to the constitutionality of a particular legislative act, it may not interpose such mere doubt against the legislative prerogative. It is only when the violation of the Constitution is "clear and palpable" that the court is justified in rendering nugatory a legislative act.

To speak accurately, the constitutionality of an act is not dependent upon an affirmative holding to that effect by the court. It is the province of the court only to determine whether a legislative act in question is or is not "clearly, plainly, and palpably" unconstitutional. The legislative and executive departments of government are under the same responsibility to observe and protect the Constitution as is the judicial department. This respon-

sibility is always present in the enactment by the Legislature, and approval by the executive, of all legislation. The constitutionality of all proposed legislation must be determined in the first instance by such co-ordinate branches of the government. Within the zone of doubt and fair debate such determination is necessarily conclusive. For the court to enter that zone would of itself be an offense against the Constitution. But when a legislative act is clearly and unmistakably unconstitutional, then the court must so declare. By common consent such a declaration is not deemed as usurpation by the court, but as a protest against usurpation already done. In such a case the court furnishes the only means of authoritative protest possible to the body politic. The responsibility which thus falls upon the judicial branch is an extraordinary one. It is the duty of the court to meet it fully and fairly and without evasion. On the other hand, it performs the duty with scrupulous regard for the prerogatives of the co-ordinate branches of the government and without lust of power. Hence the rule which obtained in an early day, and which has been adhered to strictly ever since, that the court will declare a law unconstitutional only when it is "clearly, plainly, and palpably so." See *Morrison v. Springer,* 15 Iowa, 304. In *Santo v. State,* 2 Iowa, 165, it was said that the case presented must be "clear, decisive, and unavoidable." To the same effect are *Stewart v. Board of Supervisors,* 30 Iowa, 14; *Sisson v. Board of Supervisors,* 128 Iowa, 464; *McGuire v. C., B. & Q. R. R.,* 131 Iowa, 340; *Hubbell v. Higgins,* 148 Iowa, 36.

In the last cited case we said: "It is well settled that the courts will not declare unconstitutional an enactment of the Legislature unless it is clearly and palpably so. The power of the courts to nullify the act of a co-ordinate branch of the government is one of grave importance. Its exercise has always been recognized by all the departments of government as essential to the well-being of

the body politic. But the power is one which the courts exercise with great caution and with the highest regard for the prerogatives of the legislative department. With the wisdom or the advisability of the legislation the courts have nothing to do. That question must be argued before the legislative tribunal."

The previous utterances of this court in that regard are in harmony with those of the Supreme Court of the United States. *Booth v. Illinois,* 184 U. S. 431, (22 Sup. Ct. 425, 46 L. Ed. 623); *Atkin v. Kansas,* 191 U. S. 223, (24 Sup. Ct. 124, 48 L. Ed. 148); *Holden v. Hardy,* 160 U. S. 397, (18 Sup. Ct. 383, 42 L. Ed. 780). Obedient to this rule, we pass to a consideration of the main question.

Does the act in question offend against the Constitution in that its operation is not uniform, or in that it grants immunities to some classes of citizens which are withheld from others? That the act constitutes special legislation, and that its practical application will be limited to comparatively few persons, must be conceded. But this is not sufficient to condemn. A very large part of all legislation is subject to this characterization. *McAunich v. Railroad Co.,* 20 Iowa, 338; *Railroad Co. v. Mackey,* 127 U. S. 205, (8 Sup. Ct. 1161, 32 L. Ed. 107).

It is urged by appellee that the classification adopted in the act is purely arbitrary and unreasonable, and that it rests upon no natural basis. No very definite rule has ever been laid down whereby the reasonableness of a statutory classification may be determined. In the very nature of the case no definite rule is possible for such purpose. Generally speaking, classification must be based upon substantial distinction which makes one class so different from another as to suggest the necessity of different legislation with respect to it. It must be natural and reasonable and not arbitrary or capricious. The legis-

2. SAME: uniform operation: classification.

lation must extend to and embrace accurately all persons who are or may be in like circumstances. For a collation of the utterances of the courts on this question, see *Hubbell v. Higgins, supra*.

The act under present consideration applies only to persons engaged in the business of buying milk, cream, poultry, eggs, and grain. Is this classification arbitrary and capricious, or does it arise fairly out of existing conditions? Has the statute fairly aimed at a particular evil, whether real or apparent, and is the classification as comprehensive as the supposed evil practice which is sought to be restrained? Professedly, the act undertakes to promote fair competition in the purchase of the commodities enumerated therein.

For the purpose of the consideration of the reasonableness of the classification in question, we must take note of matters of common knowledge and of common report. *McGuire v. C., B. & Q. R. R., supra; Chicago, B. & Q Ry. Co. v. McGuire,* 219 U. S. 549, (31 Supt. Ct. 259, 55 L. Ed. 328).

One of the great legislative problems of the day is to protect fair competition in the business world without unduly interfering with the freedom of contract. We may properly presume that the problem is greater in some lines of business than in others. In the purchase of commodities, the methods of business adopted are quite as various as the different commodities. Methods are adopted which are peculiar and limited to dealings in a certain commodity. Evil practices, therefore, may arise in the business methods pertaining to one commodity, which do not obtain at all in relation to other commodities. Practices may obtain which contravene no statute, and which, nevertheless, would be deemed as morally dishonest and detrimental to the public interest. If it be true that large corporations enter the creamery business and cover a large territory, including

3. SAME.

many purchasing points, and if it be true that they resort to methods which would be deemed morally dishonest and unjust in order to obtain a monopoly of the creamery business in the territory which they so occupy, then a situation is presented which fairly calls for legislative attention. The legislative problem thus presented is manifestly a difficult one. The resulting legislation may not be the best. But a legislative act which is directed against such *particular* evil ought not for that reason alone to be regarded as capricious and arbitrary in its classification. The particular methods which are condemned by the legislative act under consideration are set forth therein. It is quite manifest that a company sufficiently large in its capital and in the scope of its business could obtain a monopoly for itself in whatever territory it chose, by adopting the methods which are enumerated and prohibited in the statute. The temporary maintenance of artificial prices for the sole purpose of destroying a weaker competitor and creating a monopoly is one of the modern evil inventions. All that is required for its sure success is that there be great inequality of financial resources in favor of the offending party. A multitude of people buy milk and cream for immediate consumption. Comparatively few buy milk and cream "for the purpose of manufacture." To the multitude who buy for immediate consumption, a monopoly would be quite impossible, and its attempt quite absurd. But those who buy milk and cream "for the purpose of manufacture" sustain a distinctly different relation to the trade and to the community in which they operate. The magnitude of their operations is limited only by the magnitude of their resources. The motive to monopolize is present as well as the ability to reap its fruits when acquired. In the nature of the case, the discriminations which are condemned in the legislative act are practicable as a practice only to those who engage in the business on a large scale. We are impressed, therefore, that the classification adopted

is one which arises quite naturally, and that it rests upon a substantial and practical distinction. Substantially the same reasoning is applicable to those persons who "buy poultry, eggs, and grain for storage." The argument may require modification in its detailed application to the latter class; but we will not dwell longer upon it.

The Constitution was intended to announce certain basic principles to serve as the perpetual foundation of the state. It was not intended to be a limitation upon its healthful development, nor to be an obstruction to its progress. New days bring new problems. Legislation must meet these problems as they come; otherwise our plan of government must prove inadequate. Manifestly, we ought not to be swift to adopt such a technical or strained construction of the Constitution as would unduly impair the efficiency of the Legislature to meet its unavoidable responsibilities.

Turning to our own previous cases, great liberality has always been indulged in the matter of classification. In *McAunich v. Railroad,* 20 Iowa, 338, the rule is stated as follows: "Such laws are general and uniform, not because they operate upon every person in the state, but because every person who is brought within the relations and circumstances provided for is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform *is not affected by the number of persons within the scope of their operation."*

From *McGuire v. C., B. & Q. R. R., supra,* we quote as follows: "But the reasonable classification of persons for the purposes of legislation according to occupation, business, or other circumstances, by which one class or portion of the people is differentiated from other portions or classes, has often been held not to be a violation of this constitutional guaranty. The mere fact that legislation is special, and made to apply to certain persons and not to others,

does not affect its validity, if it be so made that all persons subject to its terms are treated alike under like circumstances and conditions."

To the same effect is *Hubbell v. Higgins, supra. Shaw v. Marshalltown*, 131 Iowa, 128; *Mumford v. Railway Co.*, 128 Iowa, 685. These cases are in harmony with the overwhelming weight of other authority. No court, perhaps, has spoken more frequently upon this particular subject than the Supreme Court of the United States. Its utterances are quite conclusive on the contention that the act under consideration was a violation of the fourteenth amendment of the Constitution of the United States. From *Gundling v. Chicago*, 177 U. S. 183, (20 Sup. Ct. 633, 44 L. Ed. 725), we quote as follows: "Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business, or occupation they shall apply *are questions for the state to determine,* and their determination comes within the proper exercise of the police power by the state, and *unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrarily interfered with or destroyed, without due process of law, they do not extend beyond the power of the state to pass, and they form no subject for federal interference."*

From *Carroll v. Greenwich Insurance Co.*, 199 U. S. 401, (26 Sup. Ct. 66, 50 L. Ed. 246), a case involving an Iowa statute, we quote as follows: "In view of these cases further discussion is unnecessary; but we will add a few words. While we need not affirm that in no instance could a distinction be taken, ordinarily, if an act of Congress is valid under the fifth amendment, it would be hard to say that a state law in like terms was void under the fourteenth. . . . Many state laws which

limit the freedom of contract have been sustained by this court, and therefore an objection to this law on the general ground that it limits that freedom can not be upheld. . . . At the argument before us more special reasons were assigned. It was pressed that there is no justification for the particular selection of fire insurance companies for the prohibitions discussed. . . . If an evil is specially experienced in a particular branch of business, the Constitution embodies no prohibition of laws confined to the evil, or doctrinaire requirement that they should be couched in all-embracing terms. It does not forbid the cautious advance, step by step, and the distrust of generalities which sometimes have been the weakness, but often the strength, of English legislation. *Otis v. Parker,* 187 U. S. 606, 610, 611, (23 Sup. Ct. 168, 47 L. Ed. 323). And if this be true, then, in view of the possible teachings to be drawn from a practical knowledge of the business concerned, it is proper that courts should be very cautious in condemning what Legislatures have approved. If the Legislature of the state of Iowa deems it desirable artificially to prevent, so far as it can, the substitution of combination for competition, this court can not say that fire insurance may not present so conspicuous an example of what that Legislature thinks an evil as to justify special treatment. The imposition of a more specific liability upon life and health insurance companies was held valid in *Fidelity Mutual Life Insurance Co. v. Mettler,* 185 U. S. 308 (22 Sup. Ct. 662, 46 L. Ed. 922). See, also, *Missouri Pacific Ry. Co. v. Mackey,* 127 U. S. 205, (8 Sup. Ct. 1161, 32 L. Ed. 107) ; *Orient Insurance Co. v. Daggs,* 172 U. S. 557, (19 Sup. Ct. 281, 43 L. Ed. 552) ; *Otis v. Parker,* 187 U. S. 606, (23 Sup. Ct. 168, 47 L. Ed. 323) ; *Home Life Insurance Co. v. Fisher,* 188 U. S. 726, 727, (23 Sup. Ct. 380, 47 L. Ed. 667)." See, also, *Southwestern Oil Co. v. Texas,* 217 U. S. 114, (30 Sup. Ct. 496, 54 L. Ed. 688) ; *Western Union v. Commercial Milling Co.,* 218 U. S. 406,

(31 Sup. Ct. 59, 54 L. Ed. 1088); *Griffith v. Connecticut,* 218 U. S. 563, (31 Sup. Ct. 132, 54 L. Ed. 1151); *Kentucky Union v. Kentucky,* 219 U. S. 141, (31 Sup. Ct. 171, 55 L. Ed. 137); *German Alliance Co. v. Hale,* 219 U. S. 307, (31 Sup. Ct. 246, 55 L. Ed. 229); *Brown v. Kentucky,* 217 U. S. 563, (30 Sup. Ct. 578, 54 L. Ed. 883); *Williams v. Arkansas,* 217 U. S. 79, (30 Sup. Ct. 493, 54 L. Ed. 673). See, also, *State v. Standard Oil Co.,* 111 Minn. 85, (126 N. W. 527.) Appellee relies upon *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, (22 Supt. Ct. 431, 46 L. Ed. 679). That was a case involving a legislative act wherein certain persons or classes were expressly exempted from its provisions. The legislation was held invalid because of such exemption. If there is any inconsistency between such holding and that of the later cases of the same court, such fact does not aid the position of the appellee; the later cases being clearly against its contention. It is our conclusion at this point that it can not be said that the act under consideration is a clear and palpable violation of the constitutional provisions heretofore specified.

II. It is also urged that the act is unconstitutional as in violation of section 29, art. 3, of the Constitution of Iowa. This section provides that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." The contention here is the title of the act fails to express the subject. The act in question is concededly amendatory. The title to the original act (chapter 169, 31st General Assembly) is as follows: "An act to prohibit unfair commercial discrimination between different sections, communities, or localities, or unfair competition, and providing penalties therefor." The title to the amendatory act under consideration is as follows: "An act to amend the law as it appears in section five thousand twenty-eight-b (5028-b) of the Sup-

4. STATUTES: enactment: sufficiency of title.

plement to the Code, 1907, relating to unfair discrimination between different sections, communities or localities, defining the same and providing penalties for persons found guilty thereof." It is argued that the original act referred to "petroleum and its products" as the only commodity affected thereby, and that there is nothing in the title to the amendatory act to indicate in any way that other commodities would be included. This argument rests upon the assumption that the commodities referred to in the act constitute its subject whereas the contention of the appellant is that the essential subject of the act was "commercial discriminaion, etc." It is doubtless true that both entered into the subject-matter of the legislation. Appellant contends, however, that the latter is the more comprehensive, and that the former is more in the nature of detail.

It is not necessary that the details of the subject-matter be set forth in the title. It is sufficient if the title affords a fair "key" to the contents of the act. *Sisson v. Board of Supervisors, supra; State v. Edmunds,* 127 Iowa, 339. Appellee relies upon *State v. Bristow,* 131 Iowa, 664, wherein the title was held fatally defective. The title in that case was "An act to repeal the law as it appears in section 1347-a of the Supplement to the Code relating to the vocation of peddlers *and to enact a substitute therefor."* Acts 30th General Assembly, chapter 48. It will be noted that the legislation involved in that case was to repeal and to substitute. The title stated the subject of the law to be repealed, but was entirely silent as to the subject of the proposed substitute. In the case before us a subject is stated in the title. The question of dispute is whether the subject so stated is appropriate to the body of the bill. The question is not wholly free from doubt. It is our conclusion that the title is sufficient for the purpose of an amendatory act to forbid our interference on the ground of unconstitutionality.

The insufficiency of the indictment was laid as a ground of dismissal in the court below and was sustained by the ruling of the court. This ground is still· urged by appellee in support of the ruling of the court. The state is the appellant. The defendant can not be affected directly by a reversal. The purpose of the appeal by the state is to obtain a review on particular questions of law. In such a case the state may select the rulings of the trial court which it desires to present for review. In its opening argument, the only questions pressed for our consideration by the state are those relating to the constitutionality of the legislative act. We will not, therefore, consider the question of the sufficiency of this particular indictment.

5. CRIMINAL
LAW: appeal
by state:
scope of
review.

Appellee filed a motion to dismiss the appeal, and such motion was submitted with the case. Since the filing of the motion, the grounds thereof have been cured by amendment to the abstract. It is therefore overruled.

In holding the statute to be unconstitutional we think the trial court erred. Its judgment must therefore be *reversed*.