STATE OF IOWA, Appellant, v. M. J. WOITHA, Appellee.

No. 44742.

JUNE 20, 1939.

Fred D. Everett, Attorney General, Jens Grothe, Asst. Attorney General, and Maurice E. Rawlings, County Attorney, for appellant.

Robert P. Munger, for appellee.

MITCHELL, C. J.—On the first day of November 1937, there was filed in the office of the clerk of the municipal court in and for Sioux City, Iowa, an information charging M. J. Woitha with the crime of failure to post price of motor vehicle fuel in violation of section 5093-f4, Code of Iowa 1935, as amended by chapter 136, Acts of the 47th General Assembly. There was also filed on the same day a separate information charging him with the illegal selling of motor vehicle fuel in that he sold said motor vehicle fuel at a price which deviated from the posted price set forth on the price placard posted in or near the defendant's place of business in violation of section 5093-f4, Code of Iowa 1935, as amended by chapter 136, Acts of the 47th General Assembly. The defendant filed separate demurrers to each of the informations, however they were identical. The lower court sustained both of the demurrers, discharged the defendant and dismissed the cases. The State of Iowa has appealed. By order of this court the cases have been consolidated for the purpose of appeal.

The material part of chapter 136 is as follows:

"Section 1. By striking from section five thousand ninety-three-f four (5093-f4) the last paragraph thereof and inserting in lieu thereof the following:

" 'Every distributor and other person selling motor vehicle fuel or fuel oil in this state, at wholesale or at retail, shall keep posted in a conspicuous place most accessible to the public at

their place or places of business, including bulk plants, service stations, garages and motor vehicle transports, a placard showing in words and/or figures of the same height and size but not less than one inch in height or size, the price per gallon of each grade of motor vehicle fuel and fuel oil offered for sale, the amount of state license fee per gallon thereon, the federal excise tax per gallon thereon, and the total thereof. If any rebate, discount, commission or other concession is granted by distributors or persons engaged in the sale of motor vehicle fuel or fuel oil of such nature as will reduce the cost or price to any purchaser or consumer of such products, the conditions, quantity and amount of such rebate, discount, commission or other concession shall be posted as a part of the posted price. Provided, however, at all places making wholesale sales only and upon motor vehicle transports, the words or figures shall be of such size as to be plainly legible to the public and as approved by the treasurer. All price placards shall be subject to approval of the treasurer. Any distributor or person failing to post or keep posted the placard required by this section, or who posts placards not approved by the treasurer as provided in this section, or who sells any motor vehicle fuel or fuel oil at a price which directly or indirectly, by any means or device, deviates from the posted price set forth on the price placard approved by the treasurer, shall be guilty of a misdemeanor and shall be punished by a fine of one hundred dollars or imprisonment in the county jail for thirty days. Nothing contained herein shall prohibit or restrict the distribution of earnings to the members of any distributor or person, nor to the distribution to consumers of road maps, publicity and other advertising media carrying the name of the distributor, person or produce. Each day the required placard remains unposted or an unauthorized placard remains posted, or each deviation from the posted price, shall be considered a separate offense. In the event of a third conviction for the violation of any of the provisions of this section, the state treasurer may revoke the license of such distributor or person so convicted.'

"Sec. 2. By striking from subsection one (1) of section five thousand ninety-three-f thirty-one (5093-f31) the period following the word 'fuel' in the fourth line and by inserting

in lieu thereof a comma and by adding thereto the words: 'or fuel oil.'

"Sec. 3. By adding to section five thousand ninety-three-f thirty-one (5093-f31), as paragraph thereof, the following:

"'For any distributor or person to change or alter the price placard until the same shall have been posted for a period of twenty-four hours except to meet a posted competitive price in that community.'"

The material part of the demurrer is as follows:

"1. That said section 5093-f4 of the Code of Iowa for 1935, as amended by the Acts of the 47th General Assembly of the State of Iowa, is unconstitutional in that said section and amendment thereto violates defendant's constitutional right by infringing upon and impairing and impeding his sacred right of contract.

"3. That said section and amendment thereto is unconstitutional for the further reason that said act and amendment imposes unlawful restrictions upon and unjustly discriminated against motor vehicle fuel dealers of the State of Iowa.

"5. That said section and amendment thereto besides providing for the posting of price provides that the dealer shall not sell, dispose of, or merchandise said fuel at a price which deviates or is different from the posted price. That said section and amendment thereto is unconstitutional, yet the restriction therein set forth providing that said fuel shall not be sold at a different price than that posted is a violation of defendant's constitutional rights and beyond the authority of the legislature to enact by the reasons above stated and enumerated."

We are thus confronted with the question of whether or not certain enactments of the legislature are constitutional.

To the legislative branch of the government is given the sole power of making laws.

That branch is composed of the representatives of the people, who have been elected by the people, and before this court will declare an act of the legislature unconstitutional, the person assailing the statute must be able to point out the particular provision that he claims has been violated, in other words there is a presumption in favor of the constitutionality of the statute.

In the case of State v. Fairmont Creamery Co., 153 Iowa 702, 706, 133 N. W. 895, 897, 42 L. R. A. (N. S.) 821, this court speaking through the late Justice Evans said:

"To speak accurately, the constitutionality of an act is not dependent upon an affirmative holding to that effect by the court. It is the province of the court only to determine whether a legislative act in question is or is not 'clearly, plainly, and palpably' unconstitutional. The legislative and executive departments of government are under the same responsibility to observe and protect the Constitution as is the judicial department. This responsibility is always present in the enactment by the legislature, and approval by the executive, of all legislation. The constitutionality of all proposed legislation must be determined in the first instance by such co-ordinate branches of the government. Within the zone of doubt and fair debate such determination is necessarily conclusive. For the court to enter that zone would of itself be an offense against the Constitution. But when a legislative act is clearly and unmistakably unconstitutional, then the court must so declare. By common consent such a declaration is not deemed as usurpation by the court, but as a protest against usurpation already done. In such a case the court furnishes the only means of authoritative protest possible to the body politic. The responsibility which thus falls upon the judicial branch is an extraordinary one. It is the duty of the court to meet it fully and fairly and without evasion. On the other hand, it performs the duty with scrupulous regard for the prerogatives of the co-ordinate branches of the government and without lust of power. Hence the rule which obtained in an early day, and which has been adhered to strictly ever since, that the court will declare a law unconstitutional only when it is 'clearly, plainly, and palpably so.' See Morrison v. Springer, 15 Iowa 304. In Santo v. State, 2 Iowa 165, 63 Am. Dec. 487, it was said that the case presented must be 'clear, decisive, and unavoidable.' To the same effect are Stewart v. Board of Supervisors, 30 Iowa [9] 14, 1 Am. Rep. 238; Sisson v. Board of Supervisors, 128 Iowa [442] 464, 104 N. W. 454, 70 L. R. A. 440; McGuire v. C. B. & Q. R. R., 131 Iowa 340, 108 N. W. 902, 33 L. R. A. (N. S.) 706; Hubbell v. Higgins, 148 Iowa 36, 126 N. W. 914 [Ann. Cas. 1912B, 822].

"In the last cited case we said: 'It is well settled that the

courts will not declare unconstitutional an enactment of the Legislature unless it is clearly and palpably so. The power of the courts to nullify the act of a co-ordinate branch of the government is one of grave importance. Its exercise has always been recognized by all the departments of government as essential to the well-being of the body politic. But the power is one which the courts exercise with great caution and with the highest regard for the prerogatives of the legislative department. With the wisdom or the advisability of the legislation the courts have nothing to do. That question must be argued before the legislative tribunal.' ''

The first attack made upon the statute is that it "violates defendant's constitutional right by infringing upon and impairing and impeding his sacred right of contract." The act does not say at what price motor fuel must or can be sold, all it says is that the price must be posted and that it cannot be sold below the price posted. We are living in a changing world; no longer is the horse-drawn vehicle the means of transportation; in its place we find the motor driven vehicle, which depends upon motor fuels to propel it. The manner of the sale and the price of gasoline are all important to the people of this state. The legislature realizing this passed the act requiring the posting of the price, so that all might know what the seller of motor fuels was asking for the product he sold. Not only does the act require the posting of the price but also that the seller will play fair with all, by selling to all at the same price. One merchant may ask 20 cents a gallon, while another perhaps on the opposite corner selling the same brand may ask 10 cents a gallon. The price is not fixed by the act, to the seller is left that privilege, the only requirement is that the seller must post his price, and then sell to all at the same price. It is but a regulation, fair and reasonable when the general use of motor fuels is considered.

The State of California passed what was known as the "Unfair Practices Act of 1913", St. Cal. 1913, p. 508, which provided that it was illegal for sellers of merchandise covered by the act to discriminate as to price between sections and communities.

The constitutionality of the act came before the supreme court of California in the case of Wholesale Tobacco Dealers

Bureau of Southern California v. National Candy and Tobacco Co., 11 Cal. 2d 634, 643, 82 P. 2d. 3, 9, 118 A. L. R. 486. We quote from that case:

"This act represents an attempt on the part of the legislature to regulate business as a whole by prohibiting practices which the legislature has determined constitute unfair trade practices. Its stated purpose * * * is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage free, open and fair competition. So far as the present case is concerned, the practice prohibited by the statute is selling below cost. * * * These principles have frequently been enunciated by this court and by the Supreme Court of the United States. In Miller v. Board of Public Works, 195 Cal. 477, 484, 234 P. 381, 383, 38 A. L. R. 1479, there are summarized as follows:

" 'The police power of a state is an indispensable prerogative of sovereignty and one that is not to be lightly limited. Indeed, even though at times its operation may seem harsh, the imperative necessity for its existence precludes any limitation upon its exercise save that it be not unreasonably and arbi- trarily invoked and applied * * * In short, the police power, as such, is not confined within the narrow circumspection of precedents, resting upon past conditions which do not cover and control present-day conditions obviously calling for revised regulations to promote the health, safety, morals, or general welfare of the public. That is to say, as a commonwealth develops politically, economically and socially, the police power likewise develops, within reason, to meet the changed and changing conditions. What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power.' * * *

"In People v. Associated Oil Co., 211 Cal. 93, 98, 294 P. 717, 720, this court stated: 'But there is no longer any doubt that this general rule has been extended so as to include measures which relate to the general welfare. In the case of Chicago, B. & Q. Ry. Co. v. Illinois, 200 U. S. 561, at page 592, 26 S. Ct. 341, 349, 50 L. Ed. 596, 4 Ann. Cas. 1175, the Supreme Court stated: "We hold that the police power of a state embraces regulations designed to promote the public convenience

8

or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety." ' * * *

"With these cases, and many others that could be cited, in mind, it is obvious that the object of the present statute is within the state's police power. That the prevention of monopolies and the fostering of free, open and fair competition and the prohibition of unfair trade practices is in the public welfare is obvious, and requires no further citation of authority. In fact this is not seriously challenged by appellant. The main arguments advanced by appellant are that the act is unconstitutional in that it curtails its previously enjoyed privilege or right of fixing the price at which it is willing to sell its goods, and of selling them at such prices, and that the act unlawfully deprives it of its freedom of action; that it is unreasonable and will not accomplish the purposes intended. These contentions go to the reasonableness of the statute in its relation to its avowed object, and do not attack the validity of that object. * * *

"In the second place, in determining whether the means provided in the statute are reasonably designed to accomplish its avowed object, if that question is reasonably debatable, the determination of the legislature is conclusive. It is not for the courts, except within the limits herein set forth, to determine whether or not the policy of a statute is economically sound or beneficial. That is a matter solely for the legislature. * * * Max Factor & Co. v. Kunsman, 5 Cal. 2d 446, 55 P. 2d 177, affirmed by the United States Supreme Court, 299 U. S. 198, 57 S. Ct. 147, 81 L. Ed. 122 * * *

" ' "So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court functus officio. 'Whether the free opera-

tion of the normal laws of competition is a wise and wholesome rule for trade and commerce is an economic question which this court need not consider or determine.' Northern Securities Co. v. United States, 193 U. S. 197, 337, 338, 24 S. Ct. 436, 48 L. Ed. 679. And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal.'' ' ''

The supreme court of the United States in recent case of Nebbia v. People of State of New York, 291 U. S. 502, 531, 54 S. Ct. 505, 513, 78 L. Ed. 940, 89 A. L. R. 1469, speaking through Justice Roberts, said:

''But we are told that because the law essays to control prices it denies due process. Notwithstanding the admitted power to correct existing economic ills by appropriate regulation of business, even though an indirect result may be a restriction of the freedom of contract or a modification of charges for services or the price of commodities, the appellant urges that direct fixation of prices is a type of regulation absolutely forbidden. His position is that the Fourteenth Amendment requires us to hold the challenged statute void for this reason alone. The argument runs that the public control of rates or prices is per se unreasonable and unconstitutional, save as applied to businesses affected with a public interest; that a business so affected is one in which property is devoted to an enterprise of a sort which the public itself might appropriately undertake, or one whose owner relies on a public grant or franchise for the right to conduct the business, or in which he is bound to serve all who apply; in short, such as is commonly called a public utility; or a business in its nature a monopoly. The milk industry, it is said, possesses none of these characteristics, and, therefore, not being affected with a public interest, its charges may not be controlled by the state. Upon the soundness of this contention the appellant's case against the statute depends. * * * The due process clause makes no mention of sales or of prices any more than it speaks of business or con-

tracts or buildings or other incidents of property. The thought seems nevertheless to have persisted that there is something peculiarly sacrosanct about the price one may charge for what he makes or sells, and that, however able to regulate other elements of manufacture or trade, with incidental effect upon price, the state is incapable of directly controlling the price itself. This view was negatived many years ago. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77.''

In the case at bar the sole purpose of the Act is the regulation of the sale of motor vehicle fuel and to prevent unfair methods of doing business.

It is also claimed that the Act unjustly discriminates against motor vehicle fuel dealers. With this we cannot agree, it includes all sellers of motor vehicle fuel and applies to all alike.

Again we quote from the opinion of this court in the case of State v. Fairmont Creamery Co., 153 Iowa 702, at page 711, 133 N. W. 895, at page 899, 42 L. R. A. (N. S.) 821:

''Turning to our own previous cases, great liberality has always been indulged in the matter of classification. In Mc-Aunich v. Railroad, 20 Iowa 338, the rule is stated as follows: 'Such laws are general and uniform, not because they operate upon every person in the state, but because every person who is brought within the relations and circumstances provided for is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform *is not affected by the number of persons within the scope of their operation.*'

''From McGuire v. C., B. & Q. R. R., supra, we quote as follows: 'But the reasonable classification of persons for the purposes of legislation according to occupation, business, or other circumstances, by which one class or portion of the people is differentiated from other portions or classes, has often been held not to be a violation of this constitutional guaranty. The mere fact that legislation is special, and made to apply to certain persons and not to others, does not affect its validity, if it be so made that all persons subject to its terms are treated alike under like circumstances and conditions.'

.''To the same effect is Hubbell v. Higgins, supra; Shaw v.

Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S.) 825, [9 Ann. Cas. 1039]; Mumford v. Railway Co., 128 Iowa 685, 104 N. W. 1135. These cases are in harmony with the overwhelming weight of other authority. No court, perhaps, has spoken more frequently upon this particular subject than the Supreme Court of the United States. Its utterances are quite conclusive on the contention that the act under consideration was a violation of the fourteenth amendment of the Constitution of the United States. From Gundling v. Chicago, 177 U. S. 183, 20 S. Ct. 633, 44 L. Ed. 725, we quote as follows:

" 'Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business, or occupation they shall apply *are questions for the state to determine,* and their determination comes within the proper exercise of the police power by the state, and *unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrarily interfered with or destroyed, without due process of law, they do not extend beyond the power of the state to pass, and they form no subject for federal interference.' "*

Thus we find that the Act is uniform, that it applies to all engaged in the sale of motor vehicle fuels. That it is to prevent unfair competition and to see that the sale of motor vehicle fuel is conducted in such a fashion as not to inflict injury upon the public at large or upon a substantial group of the people.

In holding the statute unconstitutional we think the trial court erred. Its judgment must therefore be reversed.—Reversed.

HAMILTON, RICHARDS, SAGER, · HALE, STIGER, MILLER, and BLISS, JJ., concur.