JOHN F. KEEFNER, Appellee, v. C. FRED PORTER et al., Appellants.

No. 45307.

AUGUST 6, 1940.

Fred D. Everett, Attorney General, Floyd Philbrick, Assistant Attorney General, and Stephens & Wisdom, for appellants.

Stipp, Perry, Bannister & Starzinger, for appellee.

PER CURIAM.—This is a suit in equity to enjoin the State Comptroller and State Treasurer from performing their duties and carrying out the provisions of chapter 109, Laws of the Forty-eighth General Assembly, known as the Agricultural Land Credit Act, on the grounds that said act is in violation of section 31 of Article III of the Constitution of the state of Iowa, in that it is alleged that the appropriation of $500,000 under the provisions of the act is for a local and private purpose, and not a public purpose; and that said chapter is in violation of the provisions of section 6 of Article I of the Constitution of the state of Iowa in that it is alleged that the act does not have uniform operation; and in violation of the provisions of section 30 of Article III of the Constitution of the state of Iowa in that the classification of agricultural lands in independent school districts, excluding consolidated school districts, and not applying to rural township school districts, is unreasonable, whimsical, capricious, and lacking in uniformity.

The defense was that the act in question is not unconstitutional for the reasons that the appropriation is made directly to the school districts, even though owners of agricultural land therein are relieved of a portion of their burden of taxation; that the classification of agricultural lands within school districts containing an incorporated city or town is a reasonable classification; that there is a reasonable basis for differentiating agricultural lands located in consolidated school districts from agricultural lands located in other school districts containing an incorporated city or town; and that while uniformity of taxation may be required by the constitution, uniformity of appropriation, or the distribution of the proceeds, is not required.

The trial court held the act unconstitutional on the grounds

that the appropriation was not for a public purpose, but for the private interests of the taxpayers in the districts to which it applies; and that the classification of agricultural lands located in school districts containing an incorporated city or town exclusive of consolidated school districts, was such an arbitrary and unreasonable classification that the act lacked uniformity.

The defendants being dissatisfied have appealed to this court.

The facts were stipulated. The legislative enactment challenged in this case (chapter 109, Laws of the Forty-eighth General Assembly), appropriates $500,000 for the year 1940, and the same amount annually thereafter, to be paid to the county treasurers, and by them apportioned to the various school districts of the county, upon a ratio basis, determined by the certificates of the various county treasurers as to the deficiencies in those school treasuries due to the limitation of 15 mills on agricultural lands which meet certain qualifications. The qualifications for agricultural lands required to meet these specifications are that the school tax rate for general purposes exceed 15 mills, and that the tracts of agricultural land shall exceed 10 acres. The lands are not qualified for the limitation to 15 mills, unless the landowner makes application for the qualification. The further qualification is that the agricultural land shall lie in independent school districts containing an incorporated city or town. Consolidated school districts are excluded from the benefits of the act. Said land need not be in one tract, but may be in any number of tracts which aggregate more than 10 acres.

The appellee is the owner of agricultural land located in Johnson consolidated school district, Webster township, Polk county, Iowa.

The act in question grants tax benefits only to agricultural lands located in independent school districts, and it is the claim of the appellee, who is the owner of agricultural lands in a consolidated school district, that it violates the equal protection clause of the constitution, in that it authorizes the state

of Iowa to pay the school taxes, above 15 mills, on a part only of agricultural lands located within the state.

■ We are confronted here with an attack upon the constitutionality of an act of the legislature. This court has time and again said that it will not declare such an act invalid as in violation of the constitution, unless the act clearly, plainly, palpably, and without doubt infringes the paramount law.

In the case of Kimball v. Board of Supervisors, 190 Iowa 783, 797, 180 N. W. 988, 994, the court said: .

"It is with much hesitancy that courts set aside legislative enactments. It is only when such enactments clearly and plainly infringe upon constitutional provisions that the courts should interfere with the established prerogatives of a co-ordinate branch of the government. We have always recognized and adhered to this salutary rule. Santo v. State, 2 Iowa 165; State v. Fairmont Cr. Co., 153 Iowa 702 [133 N. W. 895, 42 L. R. A., N. S., 821]; Hunter v. Colfax Consol. Coal Co., 175 Iowa 245 [154 N. W. 1037, 157 N. W. 145, L. R. A. 1917D, 15, Ann. Cas. 1917E, 803]. But when such legislative enactments do violence to constitutional provisions, it is our bounden duty to so declare."

The burden is on the appellee to overcome the presumption in favor of the act. With these rules in mind, we consider this case. The act in question benefits only the agricultural lands located in independent school districts.

■ It is stipulated that the agricultural lands located within independent school districts in the state of Iowa are of the same character and type and are devoted to the same uses as agricultural lands located outside of independent school districts.

There are in Iowa 4,871 school districts, there are only 642 independent school districts which receive benefits under this act. The owners of agricultural land in 4,229 school districts receive no benefits.

It is the claim of the appellant that the act, because it specifies agricultural lands in independent school districts, sets

up a class, and that the legislature had the power to make the classification of these districts, and to select the class which would be made the beneficiary of the appropriation provided in the act.

That classification may be adopted by the legislative branch of the government is conceded. But it is well established that a classification may not be arbitrary or unreasonable, and must be calculated to further some proper public purpose. The classification must provide for a basis which will effectually single into a separate class the persons or objects with which the purpose of the legislature is concerned. There must be a reasonable relationship between the purpose of the legislation, and the basis of the classification set out in the act.

Clear and hostile discriminations cannot be made under the guise of classification.

In the case of Louisville Gas Co. v. Coleman, 277 U. S. 32, 38, 48 S. Ct. 423, 72 L. Ed. 770, the supreme court of the United States said:

" * * * No doubt the state may take into consideration as an element in fixing the *amount* of the tax the time within which the indebtedness is to be paid; for, since the tax is a flat sum covering the entire life of the lien, the privilege of recording the short-time lien and that of recording the long-time lien have different taxable values. But classification good for one purpose may be bad for another; and it does not follow that because the state may classify for the purpose of proportioning 'the tax, it may adopt the same classification to the end that some shall bear a burden of taxation from which others under circumstances identical in all respects save in respect of the matter of value, are entirely exempt.

"Here it seems clear that a circumstance which affects only taxable values has been made the basis of a classification under which one is compelled to pay a tax for the enjoyment of a necessary privilege which, aside from the amount of the recording fee which is paid by each is furnished to another as a pure gratuity. Such a classification is arbitrary. It bears

no reasonable or just relation to the intended result of the legislation. The difference relied upon is no more substantial, as the sole basis for the present classification, than a difference in value between two similar pieces of land would be if invoked as the sole basis for a like classification in respect of such property. Certainly one who is secured by the state in the priority of his lien for a period less than five years enjoys a privilege which in kind and character fairly cannot be distinguished from a like privilege enjoyed by another for a longer period of time. The former reasonably may be required to pay proportionately less than the latter; but to exact, as the price of a privilege which, for obvious reasons, neither safely can forego, a tax from the latter not imposed in any degree upon the former, produces an obvious and gross inequality.''

In the case at bar it is stipulated that there are no differences, in regard to character, type, and use, between agricultural land located within independent school districts and agricultural land located outside of independent districts. It is therefore conceded that there is nothing about agricultural land located in independent school districts which in any way distinguishes it from all other agricultural land within the state. In truth and in fact, the circumstances which caused certain localities to select one, of several particular types of school organizations, to regulate the school affairs thereof, were in no way dependent upon the character and use of the agricultural land located therein. It is a matter of public record that the various kinds of school governments authorized by the law, have been adopted throughout the state without any reference to the character of the land or the topography of the locality.

In the case of Essex County Park Commission v. West Orange, 77 N. J. Law 575, 577, 73 A. 511, 512, the New Jersey court said:

''The only distinction between these two classes is location of the property and ownership. The latter is applied to

county property, the former to the property of certain other public agencies. That the legislature should select the property of counties for taxation and exempt a part of the property of other municipal corporations identical in its uses with that of counties, is arbitrary classification.

"That property of a class may be exempted from taxation is not to be denied, provided always that the classification is a proper one; but it is well settled that all members of a class shall be included in the taxing act whether for purpose of imposition of or exemption from taxation. * * * If a law excludes from its operation a single member of a class which it otherwise would affect, it will be invalid. * * *

"If the property is situated within the taxing district levying the tax it escapes taxation. If its location be without such taxing district it is to be taxed. It is thus sought to form a class for taxation marked by the characteristic of location merely. * * *

"It will thus be seen that the classification of the property of the taxing districts has for its basis the location of the property. It is not differentiated by its use or by characteristics possessed by it. * * *

"Classification according to the location of the property is not a classification according to any feature inherent in the property itself, but with reference entirely to chance of location, a circumstance quite as disconnected with the characteristics of the property itself as is its ownership, which was condemned as a distinguishing mark in Tippett v. McGrath, supra. * * * For these reasons the act must be held to be in contravention of the organic law, * * *."

So in the case at bar, the classification is based upon location of the property, whether the agricultural land is located in an independent school district or outside of it. That is the only distinction. That distinction has no relation to what the preamble of the act states to be the purpose of the act, namely "equalizing the burden of taxation to be borne by agricultural real estate".

The record in this case shows that the rate of school tax in the independent district of Des Moines is 18.04 mills; consolidated district of Ankeny 18.916 mills; Runnells consolidated district 28.286 mills; Johnson consolidated district (in which appellee's agricultural lands are located) 36.618 mills; Pleasant-hill rural independent district 27.81 mills; Saylor Center rural independent district 38.536 mills.

This record shows clearly that the school tax levied in many of the independent school districts is excessive, but it also shows that in consolidated school districts the burden is just as excessive. Thirty-three percent of the consolidated school districts of the state and 1.6 percent of the rural independent school districts, neither of which would benefit by this act, have a school tax exceeding 15 mills for the general fund. This act would require the owners of agricultural lands in consolidated districts, that now have a tax in excess of the 15 mills, not only to pay the excessive school tax on their own land, but in addition to pay their share of the tax to raise the $500,000 provided for by this act.

The agricultural land is the same. It might be across the road from agricultural land in a consolidated school district, which has a tax in excess of 15 mills and yet only the agricultural land in the independent district would receive benefits and the neighbor in the consolidated district would not only not receive the benefit, but would be forced to pay additional taxes. None of us like to pay taxes, but when a neighbor is forced to pay an additional tax, to be used in operating the school of his neighbor, he is being discriminated against. Equalization of taxes cannot be brought about, by shifting the tax from the shoulders of one farmer to another, levying different amounts on the same kinds of property.

We in this country do not underestimate the importance of our schools. And to maintain them we tax the owners of property. The educational facilities of a consolidated school district are just as important to the people of that district as the educational facilities in an independent district are to the people of that district. And yet under this act, where

we have property of a similar class, if it is located in an independent school district it reaps the benefits of the act, but if perchance it is in a consolidated school district, it contributes its share of the tax to raise the money provided by the act, to relieve the agricultural land in an independent school district of part of the tax levied.

The act is not an emergency relief measure. It appropriates a half million dollars for 1940 and the same amount annually thereafter. It establishes a permanent policy.

The act clearly discriminates against those owning agricultural lands not located in an independent school district. The record shows that better than 75 percent of the owners of agricultural lands in this state are not eligible to have a part of their school taxes paid by the state, under the provisions of this act.

If there was anything that distinguished agricultural land located in an independent school district from similar land in other school districts we would have a different situation. It must be kept in mind that it is stipulated ''that the agricultural land in tracts of ten acres or larger located within independent school districts in the State of Iowa, is of the same character and type and is devoted to the same use as the agricultural land located outside the boundaries of the independent school districts within the State of Iowa''.

Courts always regret when it becomes necessary to set aside an act of the legislature, this is especially true in this case, because of the excessive and exorbitant school taxes levied in certain independent school districts against agricultural land, but to permit this act to stand would mean that farmers and owners of agricultural lands in school districts other than independent districts would be required to pay the excessive and exorbitant school taxes levied against their lands, and in addition to pay their share of the tax necessary to raise the amount provided by this act. In view of such a situation, this act cannot be sustained, and the distinguished and able trial court was right in so holding.—Affirmed.