JAY B. PHELPS, PROSECUTOR, v. STATE BOARD OF EDUCATION ET AL., DEFENDANTS.

LUCY ASKAM ET AL., PROSECUTOR, v. STATE BOARD OF EDUCATION ET AL., DEFENDANTS.

Argued May 10, 1935—Decided July 26, 1935.

Before Justices PARKER, CASE and BODINE.

For the prosecutors, *Robert H. McCarter* (*Ward J. Herbert*, on the brief).

For the defendants, *Raymond J. Otis*.

The opinion of the court was delivered by

PARKER, J. These two writs of *certiorari* bring up decisions of the state board of education, affirming on appeal decisions of the state commissioner of education which dismissed appeals of the several prosecutors challenging a resolution of the board of education of West New York in Hudson county, dated June 23d, 1933, which provided for certain reductions beginning July 1st, 1933, in salaries of the superintendent of schools, principals, supervisors and teachers, by percentages varying according to amount of salary; also a resolution readjusting the salaries of certain named clerks at certain stated figures. The commissioner of education dismissed the appeals before him on July 18th, 1934: the state board affirmed on February 9th, 1935.

The resolution first mentioned, relating to those having the status of teachers, is founded on chapter 12 of the laws of 1933 (*Pamph. L., p.* 24; *N. J. Stat. Annual* 1933, *p.* 410, § 185-225b), entitled "An act respecting the salaries or compensation of officers and employes, and persons holding positions in the several school districts of this state." This act contains the following preamble:

"Whereas, due to present economic conditions, an emergency exists which requires that the board of education of every school district in this state be enabled to fix and determine, by resolution, the amount of salary or compensation to be paid to officers and employes of and persons holding positions in any such school district;" and proceeds to enact that

"The board of education of every school district in this state shall have full authority, by resolution, to fix and determine the salaries and compensation to be paid to officers and employes of and persons holding positions in any such school district, between the first day of July, 1933, and the first day of July, 1934, notwithstanding any such person be under

tenure or not." There are certain provisos not here material, viz., that there shall be no increase of pay during the year; that rights in the pension fund remain unaffected; that the existing minimum salary of teachers of $70 per month remain unchanged; and a further proviso, relied on by prosecutors as part of their case, "that in fixing salaries or compensation there shall be no discrimination among or between individuals in the same class of service." Section 2 provides that nothing in the act "shall be construed to affect or impair the continuity of position or employment under any tenure of office statute."

The resolution of June 23d, 1933, relating to teachers reads as follows:

"Resolved, that between July 1st, 1933, and July 1st, 1934, the salaries of the superintendent of schools and of all principals, supervisors and teachers in the West New York school system be and they are hereby reduced as follows:

"All salaries from $1,200 to $1,999 per annum reduced ten per cent.;

"All salaries from $2,000 to $2,499 per annum reduced eleven per cent.;

"All salaries from $2,500 to $2,999 per annum reduced twelve per cent.;

"All salaries from $3,000 to $3,499 per annum reduced thirteen per cent.;

"All salaries from $3,500 to $3,999 per annum reduced · fourteen per cent.;

"All salaries from $4,000 to $5,600 per annum reduced fifteen per cent.;

All figures being inclusive; provided, however, that the salary of any elementary school teacher shall not be reduced below the minimum of $1,200 per annum, and the salary of any high school teacher shall not be reduced below the minimum of $1,600 per annum."

The other resolution of like date relates to "clerks" and is as follows:

"Resolved, that between July 1st, 1933, and July 1st, 1934, the salaries of clerks in the West New York school system be

and they are hereby reduced to the amounts set opposite their respective names below:

"Pearl Rutan .. .. . . . $2,200 per annum
Rose Millimet ...... . .. 1,600 " "
Caroline Johansen ... ... 1,600 " "
Madelyn Offerman ... 1,200 " "
Angela Wintrich ....... 1,200 " "
Marie Martin ..... ... 1,200 " "
Sylvia Wilson ........... 1,200 " "
Cathleen Bach · ...... . 1,200 " "
Virginia Otis ..... ..... 1,000 " "
Helen Roth ... ....... 900 " "
Marion Holm . .... , . 900 " " "

We take up first the resolution affecting the teacher group. As to this, the two main propositions are that the act of 1933 is unconstitutional as impairing the obligation of contracts; and secondly, that the scheme of salary reductions violates the proviso in that act forbidding "discrimination among or between individuals in the same class of service."

The argument for unconstitutionality proceeds on these lines: after three years of contract service the teachers are entitled generally to indefinite tenure under the act of 1909, chapter 243 (*Pamph. L., p.* 398; 4 *Cum. Supp. Comp. Stat., p.* 4763, § 106a); that tenure is contractual; and the legislature is powerless to interfere with it, or to authorize a board of education to interfere. All the prosecutors in the teacher group are in the indefinite tenure class.

The act of 1909, relating to tenure, provides, among other things, that no teacher shall be dismissed or subjected to reduction of salary except for certain causes after charges and a trial. That established a legislative status for teachers, but we fail to see that it established a contractual one that the legislature may not modify. If the argument now made is sound, the act of 1909 is irrepealable as to any teacher holding his position by tenure at any time thereafter. A board of education is a public body, created by the legislature,

with certain powers conferred by statute. It is a municipal corporation, or at least a *quasi*-municipal corporation, and, as such, subject to supervision and control by the legislature. The act of 1933 is in purport and effect, though not so entitled, an implied partial repealer or amendment of the Tenure act of 1909, and we are clear that it was well within the power of the legislature. The status of tenure teachers, while in one sense perhaps contractual, is in essence dependent on a statute, like that of the incumbent of a statutory office, which the legislature at will may abolish, or whose emoluments it may change. See *Vroom* v. *Board of Education*, 79 *N. J. L.* 46. We are clear that the legislature could repeal the act of 1909. If it could repeal it, it can modify it as thought best, and that it did by the act of 1933. It is suggested in the brief that the teachers have rights of the same standing as those of bondholders but we see no merit in this suggestion and hardly think it is made seriously.

Secondly, with regard to the claim that there is in the resolution discrimination between individuals in the same class of service because of the varying percentages of reduction based on salary limits. We are unable to perceive any such discrimination. The resolution relating to teachers divides them into six classes according to salary, the first class including those drawing salaries from $1,200 to $1,999 per annum, and so upward by steps of $500 each except the last, where the limits are from $4,000 to $5,600. The higher the salary, the greater the percentage of reduction. But every one in the same class suffers the same per cent. reduction. It is true that in some cases where one salary is just over the minimum of the class, and another just under the maximum of the next class below, the first is cut to below the second; but that does not create a discrimination between individuals in the same class of service; it is simply an arithmetical result of applying a general formula. Counsel point out what is probably a clerical error touching two individuals who are apparently not parties to this proceeding. The complaint here is that the board did not follow its own resolution; but that vagary is not the object of attack by

these writs. Again, it is said that the board paid no attention to individual merit or demerit. Naturally, it did not, as that is expressly forbidden by the statute of 1933.

As to the resolution bearing on the clerks, counsel for respondent argues that they are not entitled to protection under the Tenure act, and claims they are not protected by the proviso in the act of 1933. But be this as it may, we concur in the view of the commissioner of education that the reductions are likewise by classes according to salary, the two $1,600 clerks being reduced from $2,300; the four $1,200 clerks from $1,500; the one $1,000 clerk from $1,100; the two $900 clerks being new employes. As to the two so-called teacher-clerks, we think that one holding a teacher's certificate but doing only clerical work is properly classified as a clerk. The question is what such a person is doing, not what he or she is certified as qualified to do.

Much of the voluminous brief for the prosecutors is devoted to the proposition that "there is no justification for the assumption that there was in West New York at the time of the adoption of the salary resolutions, such a financial debacle as justified the passage of the resolutions." The brief treats this matter as though the board, without so alleging in its resolutions, assumed the existence of an emergency in West New York, and as though this court must, if it can, assume such existence in order to support the resolutions. But the preamble of the statute, fully quoted above, expressly recites that "due to present economic conditions an emergency exists which requires that boards of education be enabled to fix and determine," &c. The argument apparently ignores this fact, viz., that the legislature itself in its preamble not only assumed, but declared, the existence of an emergency "which requires that the board of education of *every* school district in this state be enabled," &c. Language could not be broader or more definite, as a preface to the enacting clause.

The judgments and decisions of the state board under review will be affirmed, with costs.