In re Estate of Charles Ragan.

Joe Vetter, Administrator, Appellee, v. Grant Griffith et al.,
Appellants.

No. 46841.

June 18, 1946.

Dalton & Dalton, of Atlantic, for appellants.

E. S. Holton, of Atlantic, and Curtis W. Gregory, Special
Assistant Attorney General, for appellee.

Mulroney, J.—Joe Vetter, administrator of the estate of
Charles Ragan, applied to the court for an order to sell the
homestead of his decedent to pay claims of the Board of Social
Welfare, Division of Old Age Assistance. The claims were for
$1,640.30 for money paid to Charles Ragan and $100 toward
his funeral expenses and $2,012.40 for money paid to his wife,
Louisa J. Ragan, or a total of $3,752.70 paid by the Division
of Old Age Assistance. The only property in the estate was
the homestead, worth about $1,500. Charles Ragan died No-

vember 23, 1943, and his wife, Louisa, died October 11, 1944. They had never had any children.

Objections to the application were filed by the brothers and sisters of Louisa J. Ragan and the daughter of her deceased sister. One of the objecting brothers (Grant Griffith) had been appointed administrator of Louisa's estate. In their pleading, called an objection and cross-petition, the objectors denied the sufficiency of the filed claims and asserted that Charles Ragan's title to the homestead rested on a quitclaim deed from his wife, Louisa, dated January 28, 1928. They alleged the deed was delivered at a time when Louisa was sick and thought she would die and it was mutually agreed that if she recovered the deed was to be ineffective. The prayer was for a denial of the application and a decree that the objectors were the owners of the property.

After hearing testimony the trial court denied the objections and ordered the property sold and the proceeds applied on the claims. Upon this appeal the objectors argue that Charles Ragan held the homestead in trust for his wife; that in any event, if Charles Ragan owned the property and his estate was less than $7,500, his wife became the owner of the homestead upon his death; and "the homestead right of the Ragan family became a vested property right and could not be affected by a later statute."

Chapter 249, Code, 1946 [chapter 189.1, Code of 1939], entitled "Old-Age Assistance" contains various statutes providing that assistance may be granted to residents of Iowa who have attained the age of sixty-five years. Section 249.19, Code, 1946 [section 3828.022, Code, 1939], found in the above chapter, provides in part as follows:

"On the death of a person receiving or who has received assistance under this chapter or of the survivor of a married couple, either or both of whom were so assisted, the total amount paid as assistance, shall be allowed as a lien against the real estate in the estate of the decedent and as a claim of the second class against the personal estate of such decedent, in the event the estate is admitted to probate. Neither the homestead nor the proceeds therefrom of such decedent or his survivor, shall be exempt from the payment of said lien or

claim, any act or statute to the contrary notwithstanding. * * * In case of the death of either husband or wife, either or both of whom have been receiving or have received assistance under this chapter, the estate of deceased shall not be settled or the homestead sold until the surviving spouse shall die or cease to occupy the homestead as such.''

A reading of the above statute shows that the first two propositions urged by the objectors are immaterial. The administrator of Louisa's estate was before the court. He testified there was no property in that estate unless it be this $1,500 homestead. We need but comment that the evidence was far short of proving that Charles Ragan held the title in trust for his wife. As surviving spouse, Louisa inherited the homestead upon Charles' death, under section 636.32, Code, 1946 [section 12017, Code of 1939], since there was no issue and Charles' estate was less than $7,500. But her title was subject to liens for old-age assistance furnished to her husband and to herself. Under the statute the liens could be enforced only after her death. Thus, if the wife held title when she died, then, under the above-quoted statute it would be a title that was subject to liens for old-age assistance furnished to her and to her husband. These sale proceedings are in the husband's estate. The record presented to us is not entirely clear but we assume that the liens are for assistance furnished the husband and wife during the former's lifetime and the funeral services for the husband. Any claim for assistance furnished the wife after her husband's death would, of course, have to be established in her estate.

The third proposition, that a homestead right is a vested property right that cannot be taken away by a later act of the legislature, is without merit. The argument proceeds on the theory that the exemption arising by reason of the homestead character of the property continued beyond the death of Mrs. Ragan and can be asserted by these objectors who are her collateral heirs. Section 561.18, Code, 1946 [section 10152, Code of 1939], provides if there be no survivor, the homestead descends to the issue of either husband or wife, and section 561.19, Code, 1946 [section 10153, Code, 1939], provides:

"Where the homestead descends to the issue of either husband or wife the same shall be held by such issue exempt from any antecedent debts of their parents or their own, except those of the owner thereof contracted prior to its acquisition."

Here there was no issue of either the husband or wife. The homestead character of the property was not perpetuated after the death of the survivor, Mrs. Ragan. Section 561.21, Code, 1946 [section 10155, Code, 1939], provides:

"The homestead may be sold to satisfy debts of each of the following classes: * * *

"4. If there is no survivor or issue, for the payment of any debts to which it might at that time be subjected if it had never been held as a homestead."

The administrator of Louisa's estate, Grant Griffith, was one of the objectors. It does not appear that he objected in his representative capacity to assert the exemption his intestate, as survivor, might have had as against the claims. Section 3828.022, previously quoted, provides that the claims cannot be enforced until the survivor has died. The exemption to the survivor is contained in sections 10150 and 10151, Code of 1939. Section 561.16, Code, 1946 [section 10150, Code, 1939], provides that, "The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary * * *." And section 561.17 [10151] defines "family" to include: "A widow or widower, though without children * * * while continuing to occupy the real estate used as a homestead at the death of the husband or wife." Thus we see the survivor's homestead exemption from judicial sale is conditioned on there being "no special declaration of statute to the contrary" and it exists (when there are no children) only during the survivor's occupancy. Here the widow's occupancy had ceased at the time of these sale proceedings and there was a "special declaration of statute" making the homestead subject to judicial sale when the survivor "shall die or cease to occupy the homestead." Section 3828.022, previously quoted. Under any theory, the administrator of Louisa's estate could not object to

these sale proceedings instituted after her death. The homestead exemption is not a vested right that cannot be impaired by legislation after it has been acquired. It is a statutory privilege depending upon the will of the state. 26 Am. Jur. 12, section 9; 40 C. J. S. 440, section 10. It was within the power of the legislature, in enacting an old-age-assistance law, to make debts incurred thereunder liens against the homestead of recipients.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.