**ROGERS CARTAGE CO. v. REYNOLDS et al.**

**REYNOLDS et al. v. ROGERS CARTAGE CO.**

Nos. 10531, 10532.

Circuit Court of Appeals, Sixth Circuit.

Feb. 16, 1948.

David Axelrod, of Chicago, Ill. (David Axelrod, of Chicago, Ill., and Stanley B. Mayer, of Louisville, Ky., on the brief), for appellant and cross-appellee, Rogers Cartage Co.

J. Paul Keith, Jr., of Louisville, Ky. (J. Paul Keith, Jr. and Jones, Keith & Jones, all of Louisville, Ky., on the brief), for appellee and cross-appellant, Thomas Reynolds and others.

Before HICKS, ALLEN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a decision of the District Court granting to appellee Thomas Reynolds overtime compensation and attorneys' fees under the Fair Labor Standards Act, Title 29 U.S.C. § 216(b), 29 U.S. C.A. § 216(b), for the period from April 22, 1942, through May 5, 1945.

It is stipulated that Reynolds' case is to be controlling as to the remaining employees for whose benefit he filed his complaint.

Appellant is a common carrier trucking company engaged in transporting property in interstate commerce subject to the jurisdiction of the Interstate Commerce Commission. It is also qualified as a common carrier in Kentucky under the Motor Transportation Department. All rules and regulations promulgated by the Interstate Commerce Commission under the provisions of the Motor Carrier Act of 1935, as amended, Title 49 U.S.C. § 301 et seq., 49 U.S.C.A. § 301 et seq., with respect to drivers for common carriers of property engaged in interstate commerce were complied with during the period in controversy by appellant and its employees, appellees herein.

Appellee Reynolds and his co-appellees were employed by appellant as truck drivers. Part of the time Reynolds transported petroleum and petroleum products and alcohol in trucks over irregular routes between various points in eight states. For a major portion of the time involved Reynolds transported alcohol from different distilleries, all located in Kentucky, to a chemical corporation also located in Kentucky, where it was processed into butadiene.

Reynolds was paid in accordance with the terms of a collective bargaining agreement in effect between appellant and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. of L. Local No. 89, under a directive order issued February 7, 1944, by the National War Labor Board, but he was not paid as provided by § 207 of the Fair Labor Standards Act for overtime in excess of 40 hours per week. During the 55 week period involved herein Reynolds worked in excess of 40 hours per week for 53 weeks. For 14 weeks he did interstate driving, and for 39 weeks he transported alcohol in intrastate commerce.

Appellant attacks the judgment of the District Court upon the grounds (1) that under § 213(b) (1) it is exempt from the operation of § 207 of the Fair Labor Standards Act, because Reynolds was an employee with respect to whom the Interstate Commerce Commission had the power to establish qualifications and maximum hours of service; (2) that Reynolds' employment was specifically within the jurisdiction of the Interstate Commerce Commission under the Transportation and Explosives Act, Title 18 U.S.C. §§ 382–386, 18 U.S.C.A. §§ 382–386; (3) that the entire action is barred by the Portal-to-Portal Act of May, 1947, Public Law 49, c. 52, 80th Cong., 1st Sess., 29 U.S.C.A. § 251 et seq.

Appellee Reynolds has filed a cross-appeal, asserting that he is entitled to liquidated damages. He also claims that the Portal-to-Portal Act is unconstitutional. The pertinent sections of the Act read as follows:

Sec. 9. "In any action or proceeding commenced prior to or on or after the date of the enactment of this Act based on any act or omission prior to the date of the enactment of this Act, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect."

Sec. 11. "In any action commenced prior to or on or after the date of the enactment of this Act to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was

not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed 'the amount specified in section 16(b) of such Act."

The District Court found that the appellant relied upon the fact that it was subject to and under the jurisdiction of the Interstate Commerce Commission, on two grounds, (1) that Reynolds was specifically exempt from the overtime provisions of § 207 of the Fair Labor Standards Act of 1938, as amended, under § 213(b) (1) of that Act, and (2) because the employment of Reynolds was specifically subject to the jurisdiction of the. Interstate Commerce Commission by provisions of the Transportation of Explosives Act, Title 18 U.S.C. §§ 382–386, 18 U.S.C.A. §§ 382–386. It also found that the appellant was in full compliance with the safety rules and regulations prescribed for it by the Interstate Commerce Commission, and in fact was prosecuted for a violation of the Motor Carrier Act for permitting one or more of its employees to be on duty more than was allowed under the Interstate Commerce Commission's regulation of the hours of work prescribed for drivers.

In its conclusions of law, the court stated: "It appears that, on the · record, there is no doubt but that the defendant was in good faith and that it had reasonable grounds for believing that its omission was not a violation of the Fair Labor Standards Act of 1938, as amended; moreover, it further appears, from the record, that in fact the defendant's omission was in conformity with and in reliance upon an, administrative regulation, order, ruling, and interpretation of the Interstate Commerce Commission."

The court therefore applied § 11 of the Portal-to-Portal Act and awarded no liquidated damages, but declined to dismiss the action and gave judgment for $542.76, with interest and attorneys' fees. While the court acted within a sound discretion under § 11 in refusing to award liquidated damages, we think its refusal to dismiss the case was error.

Section 11 of the Portal-to-Portal Act clothes the court with discretionary control over the item of liquidated damages; but § 9 is mandatory and much broader in scope than § 11. It provides that an employer shall not be "subject to any liability or punishment" for omission to comply with § 207 of the Fair Labor Standards Act of 1938, as amended, if he pleads and proves that his omission was in good faith in conformity with and in reliance on any administrative regulation or ruling of any agency of the United States. It was pleaded and proved here that the appellant relied on the fact that it was subject to the jurisdiction of the Interstate Commerce Commission and that its omission to comply with § 207 of the Fair Labor Standards Act was in reliance upon the regulations, orders and rulings of the Interstate Commerce Commission. It also appears that the payments of wages were made in the amounts required by a directive of the National War Labor Board, and the appellant relied upon this fact. Both the Interstate Commerce Commission and the National War Labor Board are agencies of the United States.[1]

These circumstances, which were not controverted, were categorically found by the District Court. The defense being established, under the statute it was a bar to the action.

Sections 9 and 11 of the Portal-to-Portal Act are constitutional. Congress, in the exercise of its power to regulate interstate commerce, may interfere with valuable property rights. North American Co. v. Securities & Exchange Commission, 327 U.S. 686, 708, 66 S.Ct. 785, 90 L.Ed. 945; American Power & Light Co. v. Se-

---

[1] While the term "any agency of the United States" is not defined in the Portal-to-Portal Act, it clearly· appears from legislative definition of the term "agency" in other federal statutes, legislative reports, and the official recognition accorded these two bodies that they fall within this category. Cf. Definition of "federal agency," Federal Register Act, § 4, 44 U.S.C. § 304, 44 U.S.C.A. § 304; definition of "agency," Administrative Procedure Act, § 2(a), 5 U.S.C. § 1001(a), 5 U.S.C.A. § 1001(a); Senate Document 248, 79th Cong., 2d Sess., 196, 247, 408; U. S. Govt. Manual 1947, 2d Ed., App. A, 628.

curities & Exchange Commission, 329 U.S. 90, 67 S.Ct. 133. While the rights given to employees under the Fair Labor Standards Act are substantial, they did not exist at common law, nor were they established by the United States Constitution. Since they are purely the creature of statute, they may be altered or abolished by the Congress which established them at any time before they have ripened into final judgment. Cf. Western Union Telegraph Co. v. Louisville & Nashville Rd. Co., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437; Kline v. Burke Const. Co. 260 U.S. 226, 234, 43 S. Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077. The constitutionality of the Act has been recently considered in various District Courts, and invariably upheld. Cf. Boehle v. Electro Metallurgical Co., D.C., 72 F. Supp. 21.

The ruling that the action is barred by the Portal-to-Portal Act compels reversal of the judgment below, and makes unnecessary consideration of the effect of the Transportation and Explosives Act. However, owing to the importance of the contention as to appellant's exemption from the operation of the Fair Labor Standards Act, in light of the Supreme Court's decision in Morris v. McComb, Adm'r, 68 S. Ct. 131, we proceed to consider that feature of the controversy.

The District Court found with reference to appellant's operation [71 F.Supp. 870, 872]:

"(3) The defendant [appellant] is a common carrier of property by motor vehicle and during the period involved operated a schedule° which fluctuated from day to day, its operation being largely directed by an Alcohol Committee set up by the War Production Board in connection with the Office of Defense Transportation.

"None of the equipment operated by defendant and none of its employees were assigned regularly or specifically to interstate or intrastate trips. The defendant had no actual connection with the manufacture of, and owned no interests of any kind in, the alcohol transported.

"(4) The defendant required plaintiff [appellee] and other drivers to take the medical examination and otherwise qualify in accordance with the safety rules and regulations promulgated by the Interstate Commerce Commission, and in its operations it made out drivers' daily logs, showing driving time, and time off duty of all drivers and reported accidents in accordance with the rules of the Commission.

"The equipment operated by defendant was in conformance with the requirements of the Interstate Commerce Commission and during the period involved defendant maintained a terminal at Louisville, where its drivers were more or less stationed and during the period involved seventy-five percent of its entire operation and business was in interstate commerce and in excess of fifty percent of its business conducted at its Louisville terminal moved in interstate commerce."

 Reynolds' activities affected safety of operation in interstate commerce, and hence the Interstate Commerce Commission has the power to establish his qualifications and maximum hours of service, as well as those of his co-appellees. On the other hand, the driving of a truck entirely within a state, which Reynolds did for 39 weeks, has been held to fall within § 207 of the Fair Labor Standards Act, even though the employer performed certain services in interstate commerce. Griffin Cartage Co., Inc., v. Walling, 6 Cir., 153 F. 2d 587; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582.

In ruling that the appellant was not exempt from the operation of the Fair Labor Standards Act although it is a carrier in interstate commerce and therefore subject to the jurisdiction of the Interstate Commerce Commission, the District Court followed the rule at that time frequently observed in the lower federal courts, that the exemption of § 213(b) (1) applies only if the employees in question have spent a substantial amount of their working time driving motor vehicles in interstate commerce. West Kentucky Coal Co. v. Walling, supra; Fletcher v. Grinnell Bros., 6 Cir., 150 F.2d 337. The District Court held that the work week is the unit of time which determines whether the employee is under

322

the supervision of the Interstate Commerce Commission or the Wage and Hour Administrator, commenting that in the case of Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, the Supreme Court by inference determined that this was the applicable unit of time. Since Reynolds, for 39 work weeks of the period in question, drove trucks operating entirely within the State of Kentucky, the District Court held that appellant was liable for additional wages for overtime work in these particular weeks.

The Supreme Court announced its decision in Morris v. McComb, Adm'r, supra, after this case was decided below, and hence the District Court did not have the benefit of that decision in its consideration. In the Morris case the rule as to substantial amount of work and the rule as to the work week were in effect changed and qualified. There the total operation involved was only three to four per cent interstate, but because the interstate commerce trips were distributed generally throughout the year and their performance was shared indiscriminately by the drivers and mingled with the performance of other like services rendered in intrastate commerce, the Supreme Court concluded that the interstate trips were a naturally integral and apparently inseparable part of the common carrier service. It held that the Commission had power in such instances to establish qualifications and maximum hours of service pursuant to the provisions of the Motor Carrier Act, Title 49 U.S.C. § 304(a) (1), 49 U.S.C.A. § 304(a) (1), pointing out that the Congress had authorized the Commission, and not the courts, to decide when the case is appropriate for a general exemption, and held that the overtime provisions of the Fair Labor Standards Act do not apply to the employees involved. The conditions of appellant's operation, both as to appellee Reynolds and the 21 appellees similarly situated are very similar to those described in Morris v. McComb, Adm'r, supra. The judgment in that case controls, and we conclude that as to the activities of Reynolds and his 21 co-appellees, the appellant is exempt from the operation of § 207 of the Fair Labor Standards Act.

The judgment is reversed and the case is remanded to the District Court for further proceedings in accordance with this opinion.