PEARL B. COLLINS, on behalf of herself as an applicant, and on behalf and for the benefit of her six children, appellee, v. STATE BOARD OF SOCIAL WELFARE et al., appellants.

No. 49097.

(Reported in 81 N.W.2d 4)

FEBRUARY 5, 1957.

Dayton Countryman, Attorney General, and Harrison E. Cass, Assistant Attorney General, for appellants.

E. W. McNeil, of Montezuma, and Neill Garrett, of Des Moines, for appellee.

HAYS, J.—Two propositions are presented on this appeal: (1) Constitutionality of section 239.5, Code, 1954, as amended by chapter 6, section 4, Acts 56th G. A.; and (2) the overruling of defendants' special appearance.

Pearl B. Collins and her husband have six children, ages five to fifteen years. Both parents are physically incapacitated and unable to provide a reasonable subsistence for themselves and their children. For some time prior to July 1, 1955, Pearl Collins had been receiving monthly "Aid to Dependent Children" payments from the State Department of Social Welfare, State of Iowa, in accord with chapter 239, Code, 1954, and the regulations of the state department. Such payments, in accord with the public assistance standards, adopted by said department, were established at $293.26 per month, less $15 per month of outside income, and less a general budgetary limitation of $3 per month, making the total monthly grant or allowance $253.89. Due to the amendment to section 239.5 by chapter 6, section 4, Acts 56th G. A., this award was reduced by the County Board to $175 per month. Appeal, as provided for by section

239.7, was taken to the State Board, where the reduced award was affirmed. From this finding appeal was taken to the district court.

In the district court, petitioner filed what is termed "Petition on appeal and for a Declaratory Judgment." Count I asserts the limitation of award is unconstitutional; that the defendants' action was arbitrary, legally fraudulent and an abuse of discretion. It asks that the State Board be required to pay recipient the sum of $277.89 per month. Count II further alleges that the amendment to section 239.5, chapter 6, section 4, Acts 56th G. A., violates section 30, Article III and section 6, Article I, of the Constitution of Iowa; and also the Fourteenth Amendment to the United States Constitution. It prays that the court find said amendment to be unconstitutional, and that the State Board in affirming the award by the County Board acted in an arbitrary, unreasonable and illegal manner.

As to Count I, defendants filed, in effect, a general denial. As to Count II, they filed a Special Appearance questioning the jurisdiction of the court. This was overruled. An answer was filed and after a hearing the trial court entered a decree declaring the amendment unconstitutional. It retained jurisdiction for such further relief as is appropriate. The defendants have appealed to this court. Only Count II is involved here.

I. The overruling of the Special Appearance is assigned as error.

The defendants are the State Board of Social Welfare, the individual members of said Board, and the Board's secretary. The Special Appearance contains six propositions upon which lack of jurisdiction is based, however they all are predicated upon the claim that the action is against defendants in their official capacity; that they are employees of the State, and entitled to immunity from suit, the State never having consented thereto.

Assuming the question properly raised, we find no merit to the claimed error. The law is well settled, and conceded by appellee, that in the absence of specific consent by the State, it or its agencies may not be sued in an action to obtain money from the State or to interfere with its sovereignty or the administration of its affairs through proper agencies. 81 C.J.S.,

States, sections 214 and 216b(1); 49 Am. Jur., States, Territories, and Dependencies, sections 92, 93 and 94; rule 9, R.C.P.; Wilson v. Louisiana Purchase Exposition Comm., 133 Iowa 586, 110 N.W. 1045, 119 Am. St. Rep. 646; Hoover v. Iowa State Highway Comm., 207 Iowa 56, 222 N.W. 438; De Votie v. Cameron, 221 Iowa 354, 265 N.W. 637; Yoerg v. Iowa Dairy Industry Comm., 244 Iowa 1377, 60 N.W.2d 566. The rule is likewise well recognized that where no judgment or decree is asked against the State, but the suit is rather to require its officers and agents to perform their duty, there is no immunity recognized. McKeown v. Brown, 167 Iowa 489, 149 N.W. 593; Pierce v. Green, 229 Iowa 22, 294 N.W. 237, 131 A.L.R. 335; and authorities last above cited. In the instant case, the trial court found, and we agree, that no judgment against the State is sought, the only claim being that the statute under which the defendants purport to act is unconstitutional and that they perform their duties according to law.

The fact that the suit is in the nature of a declaratory judgment does not alter the application of the foregoing rules. 81 C.J.S., States, sections 214 and 216; Offutt Housing Co. v. County of Sarpy, 160 Neb. 320, 70 N.W.2d 382; Meredith v. Ray, 292 Ky. 326, 166 S.W.2d 437; Division XI, R.C.P.

II. The assignment of error dealing with the constitutionality of the amendment in question presents the real question on appeal.

In 1943 the legislature enacted the "Aid to Dependent Children Act", chapter 130, Acts 50th G. A. (chapter 239, Code, 1954). The title of chapter 130 states "AN ACT to provide a program of uniform state wide aid to dependent children; * * *." It is administered on the county level by the County Board of Social Welfare in accordance with regulations adopted by, and under the supervision of, the State Department of Social Welfare.

Section 239.1 defines various terms used therein. A "dependent child" means "a needy child under the age of sixteen years, or under the age of eighteen years found to be regularly attending school, who has been deprived of parental support and care by reason of death, continued absence from home, or

physical or mental incapacity or unfitness of either parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle or aunt, in a place of residence maintained by one or more of such relatives as his or their home." "Assistance" means "money payments with respect to a dependent child or children, including funeral expenses." "Recipient" means "the person to whom money payments with respect to a dependent child or children are made."

Section 239.2 states that "Assistance shall be granted under this chapter to any needy dependent child who: 1. Is living in a suitable family home maintained by one or more of the persons referred to in subsection 4 of section 239.1."

Section 239.5 provides, so far as material here, as follows: "The county board shall, on the basis of actual need, fix the amount of assistance necessary for any dependent child, subject to the approval of the state department, with due regard to the necessary expenditures of the family and the conditions existing in each case, taking into consideration any other income or resources of any child claiming assistance under this chapter and any private resources found to be available to such child. Such assistance when granted shall be sufficient, when added to all other income and support available to the child, to provide such child with a reasonable subsistence compatible with decency and health." As amended by section 4, chapter 6, Acts 56th G. A., there was added following the word health: "provided, however, that no family shall receive a grant hereunder in excess of one hundred seventy-five dollars ($175.00) per month."

Appellee contends said amendment violates Article I, section 6, Constitution of Iowa, in that it discriminates against her children by depriving them of the equal protection of the law allowed to other children who reside in families of lesser size but are otherwise similarly situated. Article I, section 6, is as follows: "All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

That chapter 239, Code, 1954, constitutes class legislation is not denied nor could it well be viewed otherwise. No claim

is made nor are we concerned with any constitutional question as to said chapter, more specifically with section 239.5 thereof, as it was prior to said amendment. The claim is that a law which had uniform operation, within the purview of Article I, section 6, Constitution of Iowa, prior to said amendment, now lacks uniformity as a result thereof.

In approaching the question it should be stated that as to paupers and indigent persons there is no common-law or constitutional duty resting upon the State to provide support, the obligation being a moral rather than a mandatory one. Thus whatever right appellee may have is purely statutory, chapter 239, Code, 1954, as amended. It is a right which may be extended, diminished, conditioned or abrogated by the legislature, and one who asserts rights to assistance thereunder must comply with all reasonable and nondiscriminatory conditions therein imposed. Michel v. State Board of Social Welfare, 245 Iowa 961, 65 N.W.2d 89; Newland v. Child, 73 Idaho 530, 254 P.2d 1066.

The books are replete with cases dealing with the above constitutional provision, both here and elsewhere. The general rule is that if there is any reasonable ground for the classification and it operates equally upon all within the same class, there is uniformity in the constitutional sense. Knudson v. Linstrum, 233 Iowa 709, 8 N.W.2d 495; Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 77 N.W.2d 15. In Cook v. Hannah, 230 Iowa 249, 252, 297 N.W. 262, 264, it is said: "If the law operates upon every person within the relation or circumstances provided for in the Act, the requirement of uniformity is met."

The general rule is well stated in Haynes v. Williams, Lapeer Circuit Judge, 201 Mich. 138, 141, 166 N.W. 938, 940, L.R.A. 1918D 233, as follows: "It is elementary that legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitutional because class legislation, if germane to the object of the enactment and made uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to

others of like kind, by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation." The power to classify includes a like power to subclassify. Dickinson v. Porter, 240 Iowa 393, 412, 35 N.W.2d 66, 78.

There is sharp conflict between the parties hereto as to the basic classification of the Act. Appellants contend it is the family; appellee says it is the dependent child.

Section 239.1(4), Code, 1954, defines a "dependent child" as "a needy child under the age of sixteen years, or under the age of eighteen years found to be regularly attending school, who has been deprived of parental support and care by reason of death, continued absence from home, or physical or mental incapacity or unfitness of either parent, and who is living with his father, mother, * * * or aunt, in a place of residence maintained by one or more of such relatives as his or their home."

Section 239.2 states: "Assistance shall be granted under this chapter to any needy dependent child who: 1. Is living in a suitable family home * * * referred to in subsection 4 of section 239.1."

Section 239.5 covers the granting of assistance and the amount thereof. It provides: "* * * The county board shall, on the basis of actual need, fix the amount of assistance necessary *for any dependent child,* subject to the approval of the state department, with due regard to the necessary expenditures of the family and the conditions existing in each case * * *. Such assistance when granted shall be sufficient * * * to provide *such child* with a reasonable subsistence compatible with decency and health." (Italics added.)

We think it clear that under the provisions of said chapter the classification adopted by the legislature is the *needy child* which is diversified from all needy children by limiting it to the needy child who is residing in the home of a relative. It is a proper and reasonable classification. Meredith v. Ray, 292 Ky. 326, 166 S.W.2d 437.

Under the record it appears that the State Board in the administration of the Act and to insure a uniform statewide program for aid to dependent children (section 239.18, Code, 1954) has established a standard schedule of amounts

necessary for the minimum of subsistence, which amounts are based upon a need-per-child basis. Such appears to be in conformity with the directives found in section 239.5. It is conceded that in the instant case each child involved meets the requirements of section 239.2, and that the minimum requirement per child is the amount prescribed by the State Board in its standard schedule. Under the chapter, prior to the amendment, each child received such amount, irrespective of the number in the home. Under the chapter, as amended, each child may receive the minimum amount without regard to the number in the home, up to the point where the sum total of such allowances reaches $175, at which point additional assistance to that home terminates. Stating it another way, under the amendment assume the minimum amount per child, situated as are the children here involved, is $47 per month. Each child receives this amount, provided the total amount paid to any one recipient does not exceed $175. If in excess of this amount, the payment to such recipient is on a prorata basis per child in the home. However, if the instant children should be distributed among the homes of the various relatives named in section 239.1(4), and nothing in the chapter seems to prohibit such distribution, each of the involved children would be entitled to the minimum allowance.

The amendment on its face appears to be, and was, we think, intended as an economy measure. In effect it is a subclassification of the original classification, i.e., dependent children, based solely upon the number of children in the home, with no consideration as to need, a circumstance completely disconnected with the basic classification and the purpose and reason therefor. See Keefner v. Porter, 228 Iowa 844, 293 N.W. 501. We think the amendment is clearly discriminatory between dependent children as defined in section 239.1(4), and is purely arbitrary and unreasonable in view of the announced purpose of the Act.

We are aware of the presumptions that are indulged in; the burden a petitioner must assume; and the rule that all reasonable grounds upon which a statute may be held valid must be overcome, which prevail in all questions involving the consti-

tutionality of a statute. Miller v. Schuster, 227 Iowa 1005, 289 N.W. 702; Peverill v. Board of Supervisors, 201 Iowa 1050, 205 N.W. 543; Berg v. Berg, 221 Iowa 326, 264 N.W. 821; Sperry & Hutchinson Co. v. Hoegh, 246 Iowa 9, 65 N.W.2d 410. Giving cognizance to such rules and viewing the instant amendment in the light thereof, we reluctantly feel called upon to declare the amendment in question to be in conflict with section 6, Article I, Constitution of Iowa, and of no force and effect.

The decree of the trial court should be and is affirmed.— Affirmed.

WENNERSTRUM, SMITH, THOMPSON, LARSON, and PETERSON, JJ., concur.

GARFIELD, J., BLISS, C. J., and OLIVER, J., dissent.

GARFIELD, J. (dissenting)—I think the majority opinion disregards fundamental principles of constitutional law and is clearly unsound. No authority has been cited that supports it.

The first sentence of the majority opinion correctly states: "Two propositions are presented on this appeal: (1) Constitutionality of section 239.5, Code, 1954, as amended by chapter 6, section 4, Acts 56th G. A.; * * *." The opinion holds the amendment violates Article I, section 6, Iowa Constitution, which provides "All laws of a general nature shall have a uniform operation; * * *." In my judgment neither plaintiff nor her children, unfortunate though they may be, have been deprived of any constitutional right.

Incidentally there is nothing in Code chapter 239, either prior or subsequent to its amendment by the Fifty-sixth General Assembly, which provides that any stated sum shall be paid as aid to dependent children. The amount of assistance is to be fixed on the basis of actual need by the county board, subject to approval of the state department, "with due regard to the necessary expenditures of the family and the conditions existing in each case" (section 239.5). The Fifty-sixth General Assembly saw fit to add the proviso that no family shall receive a grant in excess of $175 per month.

Chapter 6, Acts 56th General Assembly, is an appropriation

Act. Its title so states. It appropriates for each year of the biennium beginning July 1, 1955, for aid to dependent children fund $2,400,000. This is the largest sum ever appropriated for a single year to this fund. The largest previous amount was $2,200,000 in 1953. (Chapter 10, Acts 55th General Assembly.) In 1943 the appropriation to this fund for the first year was $375,000. (Chapter 130, section 21, Acts 50th General Assembly.) The appropriation made in 1947 to this fund for each year was also only $375,000. (Chapter 1, section 38, Acts 52d General Assembly.)

All presumptions are in favor of the constitutionality of chapter 239 as amended by the Fifty-sixth General Assembly. We have pointed out repeatedly the legislature has power to enact any law it sees fit provided it is not clearly prohibited by some constitutional provision. Within the zone of doubt and fair debate legislation is conclusive upon us. It is plaintiff's burden to negative every conceivable basis which may support this Act as amended. It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 929, 77 N.W.2d 15, 18, and citations (cited by the majority).

We should be particularly slow to hold a law invalid which limits the amount of public money that may be expended for a certain purpose. We have said that in the application of revenues the legislative conscience will not be interfered with by the courts and the legislature has plenary power as to public revenues. McSurely v. McGrew, 140 Iowa 163, 169, 170, 118 N.W. 415, 132 Am. St. Rep. 248. It appears the limitation chapter 6, Acts 56th General Assembly, places upon the amount payable to any family probably will reduce the total sum for such assistance in Iowa by more than a half million dollars annually.

The majority concedes "there is no common-law or constitutional duty resting upon the State to provide support" to indigent persons and "It is a right which may be * * * diminished, conditioned or abrogated by the legislature * * *."

Courts that have considered the matter seem to hold uniformly there is no vested or constitutional right to relief or public assistance under existing statutes. The right is purely

statutory and may be diminished or entirely abrogated by the legislature. Public aid is a gratuity, a bounty from the State.

Michel v. State Board of Social Welfare, 245 Iowa 961, 963, 964, 65 N.W.2d 89, 90, cited by the majority, points out the duty of public authorities to support needy persons "rests entirely on statute" and adds "it must be equally true that where the state * * * has assumed the duty of support, it may be limited by statute." Nothing in the Michel opinion says the conditions under which support is furnished must be reasonable and nondiscriminatory as the majority asserts.

16 C.J.S., Constitutional Law, section 245, page 1227 (published 1956), states: "Relief or public assistance is not a vested property right held by any person or group of persons. An unemployed workman has no vested right to benefits under existing statutes." Decisions that support the quoted text include Sweeney v. State Board of Public Assistance (D.C. Pa.), 36 F. Supp. 171, 174, affirmed 3 Cir., 119 F.2d 1023, certiorari denied 314 U. S. 611, 62 S. Ct. 74, 86 L. Ed. 491; Newland v. Child, 73 Idaho 530, 254 P.2d 1066, 1070, cited by the majority. See also Division of Aid v. Hogan, 143 Ohio St. 186, 54 N.E.2d 781, 782.

The Sweeney case, supra, rejects plaintiffs' contention their rights under the Fourteenth Amendment had been infringed by a family group regulation of defendant Board which resulted in a denial of the aid they formerly received under the Pennsylvania Public Assistance Law.

Volume 16A C.J.S., Constitutional Law, section 502, page 299 (also published 1956), squarely supports this dissent by stating "discrimination in the grant of mere favors is not a denial of equal protection." This is the holding of Schlesinger v. City of Atlanta, 161 Ga. 148, 162, 129 S.E. 861, 868, and Bunn v. City of Atlanta, 67 Ga. App. 147, 19 S.E.2d 553, 554, certiorari denied 317 U.S. 666, 63 S. Ct. 73, 87 L. Ed. 535. The Schlesinger opinion says, "The due-process and equal-protection clauses of our Federal and State Constitutions are applicable to rights alone, and have no reference to mere privileges which may be bestowed or withheld by the State or municipality. The individual cannot complain of discrimination in the grant of favors."

Rice v. Sioux City Memorial Park Cemetery, Inc., 349 U.S. 70, 72, 75 S. Ct. 614, 615, 99 L. Ed. 897, 900, with which we are all familiar, states: "The basis for petitioner's resort to this Court was primarily the Fourteenth Amendment, through the Due Process and Equal Protection Clauses. Only if a State deprives any person or denies him enforcement of a right guaranteed by the Fourteenth Amendment can its protection be invoked."

We have repeatedly held the effect of Article I, section 6, of our State Constitution is substantially the same as the equal protection clause of the Fourteenth Amendment, and if a statute does not offend against one of these provisions it is inoffensive to the other. Dickinson v. Porter, 240 Iowa 393, 400, 35 N.W.2d 66, 72, and citations; appeal dismissed 338 U.S. 843, 70 S. Ct. 88, 94 L. Ed. 515. See also 16A C.J.S., Constitutional Law, section 502, page 300.

Plaintiff's right to public aid is surely no greater than the right of a pensioner or a retired worker to retirement payments. Decisions of this court and a majority of others hold prospective rights to such payments are not vested or contract rights which may not be adversely affected by subsequent legislation. Nelson v. Board of Directors, 246 Iowa 1079, 1084–5, 70 N.W.2d 555, 558, 559, and citations. The Nelson decision upholds, as against claimants whose rights were prospective only, the abolition of a local retirement system for schoolteachers and the substitution therefor of the Federal Social Security System.

Annotations on this subject are found in 54 A.L.R. 943, 98 A.L.R. 505, 112 A.L.R. 1009, 137 A.L.R. 249. They cite numerous decisions for the "unquestioned rule" that a gratuitous pension granted by the public authorities is not a contractual obligation in the continuance of which the pensioner has a vested right and the pension is accordingly terminable at will.

Talbott v. Independent School District, 230 Iowa 949, 963, 299 N.W. 556, 563, 137 A.L.R. 234, is a leading case which involved a school retirement system. Although we held the retirement payments there were not mere pensions or gratuities

but were given for services not fully compensated when rendered, we stated: "But the fact that these retirement or disability payments are not gratuities, is not, in our judgment, sufficient to give to them the character of a property, or a vested, right, or a contract right, which cannot be adversely affected by subsequent legislation. * * *." The Talbott decision proceeds to hold plaintiff's rights to retirement pay for which she was eligible but had not yet applied were subject to a resolution raising the retirement age to 65 years.

Many precedents are cited and quoted from in our Talbott opinion. Among them is Phelps v. State Board of Education, 115 N.J.L. 310, 313, 180 A. 220, 222, affirmed 300 U.S. 319, 57 S. Ct. 483, 81 L. Ed. 674, involving the reduction of teachers' salaries. A law enacted in 1909 provided that teachers' salaries should not be reduced except for certain causes after charges and trial. In 1933 the legislature passed an economic emergency act under which teachers' salaries were reduced without compliance with the earlier law. The quotation from the Phelps case in the Talbott opinion includes the following (page 969 of 230 Iowa, page 566 of 299 N.W.): "That [Act of 1909] established a legislative status for teachers, but we fail to see that it established a contractual one that the Legislature may not modify. * * * The status of tenure teachers, while in one sense perhaps contractual, is in essence dependent on a statute, like that of the incumbent of a statutory office, which the Legislature at will may abolish, or whose emoluments it may change."

Plaintiff's statutory right to aid for her children is no greater than the right of a taxpayer to tax exemption. It is uniformly held such an exemption, unless based on contract, is a mere bounty which may be repealed or limited in amount by a subsequent legislature. Shiner v. Jacobs, 62 Iowa 392, 17 N.W. 613; Miller v. Hageman, 114 Iowa 195, 86 N.W. 281; In re Estate of Ragan, 237 Iowa 619, 623, 23 N.W.2d 521, 523 ("The homestead exemption * * * is a statutory privilege depending upon the will of the state.") ; annotation 173 A.L.R. 15, 83.

Kemp v. Day & Zimmerman, 239 Iowa 829, 861, 33 N.W.2d 569, 586, was an action to recover overtime pay under the Fair

Labor Standards Act. During pendency of the action, after judgments had been entered on some of the claims, the Portal-to-Portal Act which afforded new defenses to such claims was signed by the President. We held plaintiffs' rights to recover were not protected by the Federal Constitution but were subject to the Portal-to-Portal amendment. Although Kemp invoked a different constitutional provision than plaintiff here relies upon this from our opinion is now applicable: "* * * claims which an employee may have to overtime pay or liquidated damages, based solely and purely on the Fair Labor Standards Act of 1938, * * * and not on a contract with his employer, are not 'vested rights' protected by the Fifth Amendment to the Constitution of the United States. They are not contract rights or common-law rights. They are strictly statutory rights, arising under a statute enacted in the interest of commerce by Congress under the plenary and paramount power granted it by the commerce clause of the Constitution, * * *. Having the power to enact such a statute, Congress necessarily had the *power to limit its scope by amendment,* or to repeal it, if in its supreme judgment it did not accomplish the object intended because of inherent defect, or because of misinterpretation by the judiciary of its purpose, or of the intent of Congress. And the fact that such statutory change destroys rights incidentally held by private persons in no way restricts the Congressional power. Such rights are not absolute, but conditional, and affected with the 'congenital infirmity' that Congress may take them away at any time in the proper exercise of its constitutional power. It is a long-settled rule that a statutory right of action whether based on a state or federal statute may be taken away after it has accrued or is being enforced; and if the repealing statute contains no saving clause, the rights are lost to the holders." (Emphasis added.)

Our Kemp opinion is replete with citations from other jurisdictions, and quotations from them, which sustain the above views. See especially National Carloading Corp. v. Phoenix-El Paso Express, Inc., 142 Tex. 141, 150, 151, 176 S.W.2d 564, 569, 570, 178 S.W.2d 133, certiorari denied 322 U.S. 747, 64 S. Ct. 1156, 88 L. Ed. 1578. Many other decisions in line with

Kemp v. Day & Zimmerman, supra, are cited in the annotation to Rogers Cartage Co. v. Reynolds, 6 Cir., Ky., 166 F.2d 317, 3 A.L.R.2d 1090 at 1097, 1108 et seq.

See also Leach v. Commercial Savings Bank, 205 Iowa 1154, 1165, 213 N.W. 517, 521, which rejects the contention that appellants had a vested right to be subrogated to an existing statutory preference against the receiver of a closed bank of which they could not be deprived "by subsequent legislation without doing violence to well-established constitutional provisions." We quote this with approval from Sutherland on Statutory Construction, section 164: "If, before rights become vested in particular individuals, the convenience of the state induces amendment or repeal of the laws, these individuals have no cause to complain."

In State ex rel. Folsom v. New Orleans, 109 U.S. 285, 287, 289, 3 S. Ct. 211, 212, 27 L. Ed. 936, 937, 938, relators held judgments against the city for damages caused by a mob. Subsequently the city's power to levy taxes was so limited as to render the judgments uncollectible. It was held this limitation did not impair the obligation of contracts or deprive relators of property without due process. The opinion states: "The right to reimbursement for damages caused by a mob * * * is not founded upon any contract between the city and the sufferers. Its liability for the damages is created by a law of the legislature and can be withdrawn or limited at its pleasure. * * * the relators have no such vested right in the taxing power of the city as to render its diminution by the State, to a degree affecting the present collection of their judgments, a deprivation of their property in the sense of the constitutional prohibition."

The precedent last cited is quoted from with approval in Leach v. Commercial Savings Bank, supra, 205 Iowa 1154, 1168–9, 213 N.W. 517, and is cited with approval in Kemp v. Day & Zimmerman, supra, 239 Iowa 829, 862, 33 N.W.2d 569, 587.

Able counsel for plaintiff, who without compensation have pressed her claim with commendable zeal, virtually conceded in oral argument plaintiff could not legally complain if the legislature saw fit to repeal chapter 239 and that her right to any

aid would thereby terminate. If this be so it seems self-evident plaintiff has no legal cause for complaint because of the limitation of aid to $175 ·per family.

Counsel for plaintiff further conceded in oral argument that the legislature could in the first instance have provided for distribution of aid on a family basis with such a limitation as was later added by the Fifty-sixth General Assembly. They contend, however, that because the limitation was added to the law by amendment the amended Act is nonuniform in the constitutional sense. And the majority seems to have accepted this view.

I think this position is entirely unsound. By her claim of unconstitutionality plaintiff has challenged the power of the legislature, not merely the procedure it has followed. If, as seems to be conceded, the lawmakers could in the first instance have limited the distribution of aid to dependent children to $175 per family, there is no constitutional obstacle to accomplishing the same result by way of amendment. This is the effect of our holding in one of our leading precedents in the field of constitutional law—McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 378–380, 108 N.W. 902, 915, 33 L.R.A., N.S., 706.

The McGuire case involved the constitutionality of an amended statute which, as originally passed, provided that any contract with a railway company which limited its liability for negligence of a fellow servant should be void. The railroad then contracted with its employees for the payment to those who should be injured of benefits the acceptance of which would operate as a release of all claims for damages. Two decisions of this court upheld such contracts as not in violation of the Act and as barring the recovery of damages thereunder. The legislature subsequently amended the law by providing that no contract for relief should constitute any bar to an action thereunder. The railroad assailed the amended Act on various constitutional grounds including claimed violation of Article I, section 6, Iowa Constitution. We upheld the amended statute and emphatically declared, contrary to the position taken in a dissenting opinion, the constitutional power of the legislature may be exercised by way of amendment as well as in an original enactment. The opinion states:

"The first of these propositions, that a provision which could have been constitutionally embodied in the original act cannot be constitutionally added by amendment, is one for which we can·find neither authority nor precedent, and is in our judgment indefensible in principle. Indeed, it would seem that the very statement of the doctrine is its own sufficient refutation. To adopt such a rule is to say that by the creation of any statutory right or liability the state exhausts its constitutional power to legislate upon the subject, save perhaps to repeal the statute. Most assuredly this cannot be correct. * * * In the very nature of governmental and legislative power, the authority to create a statutory liability or right of action implies of necessity the right of amendment. The only conceivable exception to this rule is a case where the original statute is in the nature of a grant or contract,. within the rule of the Dartmouth College case. * * * If this be so, by what specious method of reasoning shall we justify ourselves in holding that this constitutional power may not be exercised in amendment, as well as in original legislation? It violates no contract right. It disturbs no vested right. * * * Says the Supreme Court of Wisconsin: 'No principle of law is better settled than that whatever is given by statute may be taken away by statute, except vested rights acquired under it, and except, also, that the statute must not be in the nature of a contract on part of the Legislature.' State ex rel. v. Hoeflinger, 31 Wis. 263.

"If the power to abolish or to take away a statutory right is an essential attribute of the legislative authority, is not the power to modify or amend equally broad and equally clear? Under the reserve power of the state to regulate and control corporations and to amend charters, it has often been held that whatever regulation or restriction might lawfully have been included in the original charter may be imposed by subsequent legislation. [Citations] For still stronger reasons must we hold that, *as respects a statute which contains no grant of franchise or other element of contract, and on which no claim of vested rights can be·grounded, the power of amendment is no less broad and universal than is the power to create and repeal.*" (Emphasis added.)

Chicago, B. & Q. R. Co. v. McGuire (Hughes, J.), 219 U. S. 549, 565, 574, 31 S. Ct. 259, 261, 265, 55 L. Ed. 328, 338, 341, unanimously affirms our decision. The opinion of the supreme court says: "If the legislature had the power to incorporate a similar provision in the statute when it was passed originally, it had the same power with regard to future transactions to enact the amendment.

"* * * And with respect to subsequent transactions the amendment must be regarded as having the same validity as it would have had if it had formed a part of the earlier enactment. No criticism on the ground of discrimination can successfully be addressed to the amendatory act which would not likewise impeach the statute in its earlier form."

In our approach to the problem of the validity of the statutory amendment our McGuire opinion very properly observes (at page 345 of 131 Iowa, page 904 of 108 N.W.): "* * * unless the contrary intent is clearly indicated, the amended statute is to be construed as if the original statute had been repealed and a new and independent act in the amended form had been adopted." We have repeatedly applied this familiar rule. State ex rel. Iowa State Board v. Local Board, 225 Iowa 855, 866, 283 N.W. 87, and citations; Disbrow v. Deering Implement Co., 233 Iowa 380, 387, 9 N.W.2d 378, 382; Neidermyer v. Neidermyer, 237 Iowa 685, 693, 22 N.W.2d 346, 350; Chappell v. Board of Directors, 241 Iowa 230, 235, 39 N.W.2d 628, 630. See also 50 Am. Jur., Statutes, section 468.

See too 82 C.J.S., Statutes, section 384b(1), page 902, which states: "The amendment becomes a part of the original statute as if it had always been contained therein, unless such amendment involves the abrogation of contractual relations between the state and others."

So here, there can be little doubt the legislature which enacted what is now Code chapter 239 could have included therein the provision later added by way of amendment. Clearly such provision abrogates no contractual or other vested rights. It is also clear the Fifty-sixth General Assembly, without violating any constitutional provision plaintiff invokes, could have repealed chapter 239 as originally enacted and then passed a

388

new Act as the law now stands. This would have been a useless circuity of action. The legislature could and did accomplish the same result by amending the existing statute. It acted within its constitutional power in so doing.

I would reverse.

BLISS, C. J., and OLIVER, J., join in this dissent.